**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**MORRISON CAFETERIA COMPANY OF LITTLE ROCK, INC., Respondent.**

**No. 17071.**

United States Court of Appeals Eighth Circuit.

Jan. 10, 1963.

Peter M. Giesey, Atty., National Labor Relations Board, Washington, D. C., for petitioner and Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Warren M. Davison, Atty., N. L. R. B., Washington, D. C., on the brief.

Paul S. Kuelthau, St. Louis, Mo., for respondent and Milton O. Talent, Moller, Talent & Kuelthau, St. Louis, Mo., and Andrew P. Carter, of Monroe & Lemann, New Orleans, La., on the brief.

Before JOHNSEN, Chief Judge, and MATTHES and RIDGE, Circuit Judges.

RIDGE, Circuit Judge.

The instant case is one for enforcement of an order of the National Labor Relations Board (135 N.L.R.B. No. 136) issued against respondent for violations of Section 8(a) (1) and (3) of the National Labor Relations Act, 29 U.S.C.A. § 158(a) (1) and (3). Respondent's opposition thereto is on the ground there is no substantial evidence in the record, considered as a whole, to support the Board's findings and order.

Respondent operates a cafeteria in Little Rock, Arkansas. It is a subsidiary corporation of, and an integral part of, Morrison Cafeterias Consolidated, Inc., a Florida Corporation with general offices in Tampa, Florida. Briefly, the Trial Examiner found seven independent instances of violation of Section 8(a) (1) of the Act, supra, by respondent for threatening and interrogating its employees in connection with their union affiliations and activities. Also, that respondent had discriminated against Cololsees Bowers, one of its employees, by assigning him to unpleasant and less remunerative tasks as a series of punishment for his union activity and that it discharged five employees in violation of Section 8(a) (3) of the Act. The Board affirmed the Trial Examiner's finding and

ruling in all respects except as to the discharge of one employee. As to that employee, the Board ruled that the General Counsel had not sustained the burden of proving that his discharge was discriminatory and reversed the Trial Examiner's conclusions to that extent.

The main thrust of respondent's opposition to enforcement of the Board's order as to the other four employees is posited by it thus:

"The Board's adoption of the majority rule credibility findings of the Trial Examiner was an erroneous method of resolving *the many credibility questions in this case* and resulted in the failure to appraise the testimony in the light of all the circumstances. When the testimony is viewed in the proper light the Respondent's actions are entirely explicable and in conformity with the National Labor Relations Act." (Emp. added.)

The "majority rule" which respondent theorizes in its brief is that the Trial Examiner concluded to accept and believe the testimony of all the witnesses adduced by the General Counsel and to reject that of the witnesses testifying on behalf of respondent. That is true, but it is plain in the record before us that the Trial Examiner formed that opinion from obvious contradictions, opposures and refutations appearing in the testimony of the witnesses.[1] Notwithstanding, respondent argues that such a "majority rule doctrine" of determining credibility "has not received the sanction of any court,"[2] and that we should not adopt it; citing Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); N. L. R. B. v. Walton Manufacturing Co., 286 F.2d 16 (5 Cir. 1961), reversed on other grounds 369 U.S. 404, 82 S.Ct. 853, 7 L.Ed.2d 829 and our previous opinion in Local No. 3, United Packinghouse Workers of America, CIO v. N. L. R. B., 210 F.2d 325 (8 Cir. 1954) in support thereof.

■■ We need not differentiate the rulings made in such cited authority. It is deemed sufficient to say that the rule laid down in Universal Camera Corporation v. National Labor Relations Board, infra, does not require that we "displace the Board's choice between two fairly conflicting views, (of the evidence) even though (we) would justifiably have made a different choice (of inferences) had the matter been before (us) *de novo.*" (340 U.S., l. c. 488, 71 S.Ct., l. c. 465). The Universal Camera opinion recognizes that as a reviewing court we should set aside decisions of the N. L. R. B. only when we "cannot conscientiously find that the evidence supporting (the) decision is substantial, when viewed in the light (of) the record in its entirety * * *, including the body of evidence opposed to the Board's view." (l. c. 488, 71 S.Ct. l. c. 465, supra.)

Unlike the facts found in the authorities cited by respondent, the incidents in the case at bar while few in number involved more than isolated chance remarks and interrogations as respondent would have us classify them. The interrogation of respondent's employees by its supervisory personnel concerning their union activities, and the threatening remarks were made at or about the time when there was obvious concerted activity on the part of its employees to join a union and when the four employees (ordered reinstated) were discharged. While the evidence is not as compelling as one might desire, "it gains considerably not only in credibility but in substantial-

1. The Trial Examiner's Report covers 26 pages of the printed record. Included therein is an analytical statement of the testimony of all the witnesses, his inferences therefrom and reasoning for the conclusions reached. It is not deemed necessary for us to make a detailed review of the testimony in the case at bar, because the parties are familiar therewith and no novel question is presented to us thereby.

2. It was accepted, analyzed and sustained in N. L. R. B. v. Pittsburgh Steamship Co., 337 U.S. 656, 69 S.Ct. 1283, 93 L.Ed. 1602 (1948).

ity when it is set in the background developed by other evidence." N.L.R.B. v. Great Eastern Color Lithographic Corporation, 309 F.2d 352 (2 Cir. 1962).

We cannot say that the testimony of the witnesses adduced by General Counsel is less credible, less reasonable, and weaker than that of respondent's witnesses, as respondent suggests. The Trial Examiner had an opportunity to observe the witnesses appearing before him. The matters that he determined were wholly factual, based on contradictory testimony. As to the only issue involved he found, as above stated, several acts on the part of respondent which he determined were interference, restraint and coercion of its employees in violation of Section 8(a) (1) and (3) of the Act. Considered in isolation, they are: He gave credence to and accepted the testimony of one Bowers, that (1) on April 1, 1961, Bowers (later discharged) told Head Waiter Simmons of his intention to contact a union and Simmons said that respondent would fire everybody and import workers from outside the State before it would allow a union in the cafeteria, and warned Bowers that he would lose his job if he mentioned a union again; (2) that on April 4th, Dining Room Supervisor Autry told Bowers, who had remarked that the employees needed a union, "Boy, if you mention union again you are fired"; (3) that on April 12th Simmons reached into an employee's pocket, withdrew the union authorization card she had just signed, read it, and returned it to her with the remark, "You are all trying to get an organization"; (4) on April 13th, following the discharge of Waiter Handy, Autry said, "You don't know anything about a union here," when Handy asked him why he was fired; (5) on April 13th, just before discharging Waiter Ross, Autry asked him if he knew anything about "this

hush-hush talk * * * about the union"; (6) on April 14th or 15th, Autry asked a group of maids whether they "knew anything about the union"; and, (7) on April 15th, Simmons asked employee Horner whether she had signed a union authorization card.[3] When the above actions on the part of supervisory employees of respondent are considered in context with General Counsel's witnesses' testimony as a whole and the warp and the woof of the setting in which they arose and occurred as shown in the record, we think that an inference could reasonably be reached therefrom by the Examiner and the Board, that such is evidence appearing in the course of a union organizational campaign by employees of respondent, from which a reasonable conclusion could be made that they constituted interference, restraint and coercion within the scope of Section 8(a) (1) of the Act.

Seemingly, respondent does not contend that such matter would not constitute interference, restraint or coercion within the meaning of Section 8(a) (1), supra. It argues that such action should not be so considered and interpreted because a more rational interpretation of the testimony of all the witnesses should have been made by the Examiner on the record as a whole. It is because respondent considers the rationale of the Examiner, adopted by the Board, to be inexplicable and his theory of decision not tenable, that it asks us to refuse enforcement here. Hence this case boils down to this * * * it is upon credibility findings alone that we are asked to consider and weigh the "findings and conclusions" as made by the Trial Examiner in the light of the record as a whole. Respondent says * * * "bearing in mind the bias of the ex-employees whose testimony was credited by the Examiner and their interest in proving that the Re-

3. In respect to each of the seven findings, respondent in its brief sets forth its version of the testimony relating thereto. But as said by the Supreme Court in N. L. R. B. v. Pittsburgh Steamship Co., footnote 2, ante: "Suffice it to say in this case our attention has been called to no credited testimony which 'carries its own death wound,' and to none discredited which 'carries its own irrefutable truth.'" 337 U.S. l. c. 660, 69 S.Ct. l. c. 1286.

spondent knew of their activities and was opposed to the Union," they should not be believed. The rule in this Circuit is that "the question of credibility of witnesses and the weight to be given their testimony" in labor cases is primarily one for determination by the trier of facts. Paramount Cap Mfg. Co. v. N. L. R. B., 260 F.2d 109 (8 Cir. 1958); Kitty Clover, Inc. v. N. L. R. B., 208 F.2d 212, 214 (8 Cir. 1953). See, also, N. L. R. B. v. Walton Mfg. Co., 369 U.S. 404, 407–408, 82 S.Ct. 853, 7 L.Ed.2d 829 (1961). This Court is not the place where that question can be resolved, unless it is shocking to our conscience. It is not so here.

█ When the words and deeds of the respondent's supervising employees are considered in their proper setting, it appears in this record that they were reasonably likely to have interfered with and restrained respondent's employees in their "right to self-organization, to form, join or assist (a) labor organization[s]" under Section 7 of the N. L. R. A. (29 U.S.C.A. § 157) and that respondent violated Section 8(a) (1) and (3) of the Act, supra, in so doing.

█ Respondent contends that Cololsees Bowers, the leader of the employee's union organizational activities, should not be reinstated in its employment, without prejudice, and made whole for any loss of earnings, because he cursed and offered to fight supervisory employee Autry. The Trial Examiner found no threat to kill Autry was made by Bowers as respondent first contended, and the weight of the substantial testimony as to that matter amply sustains that finding. The Examiner did find that Bowers cursed Autry and offered to fight him after his discharge became effective and before he (Bowers) left respondent's premises. However, the Examiner concluded and the Board agreed that though "Bowers was combative" after his discharge, "under the circumstances, including provocation for several days before (his discharge for union activities, he was) not (belligerent) to an extent which warrants denial of remedy to him." On the record

as a whole we cannot say as a matter of law that the decision of the Board in that respect is wrong. Cf. N. L. R. B. v. Efco Mfg. Inc., 227 F.2d 675 (1 Cir. 1955).

A decree will be entered enforcing the Board's order.