MORRISON CAFETERIAS CONSOLIDATED, INC., and Morrison Cafeteria Company of Little Rock, Arkansas, Petitioners,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 17832.

United States Court of Appeals, Eighth Circuit.

Aug. 19, 1970.

Frank H. Itkin, Atty., N.L.R.B., for respondent; Arnold Ordman, Gen. Counsel, N.L.R.B., Dominick L. Manoli, Associate Gen. Counsel, N.L.R.B., Marcel Mallet-Prevost, Asst. Gen. Counsel, N.L.R.B., and Eli Nash, Jr., Atty., on the brief.

Andrew P. Carter, of Monroe & Lemann, New Orleans, for petitioners; C. King Mallory, New Orleans, La., on the briefs.

Before MATTHES, Chief Judge, and LAY and HEANEY, Circuit Judges.

HEANEY, Circuit Judge.

This case is here upon the petitioners' request to review and set aside an amended order of the National Labor Relations Board and the Board's application for enforcement of that order. The Board's original decision is reported at 148 N.L.R.B. No. 139, 56 LRRM 1483 (1964) and its amended decision at 177 N.L.R.B. No. 113, 71 LRRM 1449 (1969).

We have carefully reviewed the briefs and records and find that there is no merit to the petitioners' contentions that the Trial Examiner was biased or that the matter was inordinately delayed by the Board. See, N.L.R.B. v. Rutter-Rex Mfg. Co., 396 U.S. 258, 90 S.Ct. 417, 24 L.Ed.2d 405 (1969). We are also convinced that substantial evidence on the record as a whole supports the Board's finding that the petitioners, through a supervisor, interrogated an employee concerning her knowledge of Union activity and that such interrogation was violative of § 8(a) (1) of the Act. N.L.R.B. v. Morrison Cafeteria Co. of Little Rock, Inc., 311 F.2d 534 (8th Cir. 1963) enforcing, 135 N.L.R.B. No. 136, 49 LRRM 1720 (1962). We are further convinced that the petitioners violated § 8(a) (1) of the Act by threatening employees with retaliatory measures for Union activities. See N.L.R.B. v. Gissel Packing Co., 395 U.S. 575, 618–619, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969); N.L.R.B. v. Louisiana Manufacturing Company, 374 F.2d 696, 702–703 (8th Cir. 1967).

We consider in more detail the propriety of the Board's finding that the petitioners violated § 8(a) (5) of the Act by closing its cafeteria in Little Rock, Arkansas, without notifying or bargaining with the Union in regard to the decision to close the cafeteria and in regard to the effect of the closing on the employees.

The pertinent facts can be summarized: In late 1961, an organizing campaign was undertaken by the employees of the cafeteria. Morrison-Little Rock engaged in various acts of

interference with the employees' statutory rights and was found by the Board to have engaged in unfair labor practices. N.L.R.B. v. Morrison Cafeteria Co. of Little Rock, Inc., *supra*. In February, 1963, following the reinstatement of two of the employees who had been discriminated against, Union activities were renewed.

On March 12, 1963, the Union filed a petition with the Board for an election at the employer's cafeteria in Little Rock. The parties agreed to hold an election on April 19, 1963. The Union won the election by a vote of twenty-seven to fifteen. At the conclusion of work on election day and after the results of the election were known, a Vice President and Director of the parent corporation, Morrison Consolidated, announced to the employees that the Little Rock cafeteria would be closed effective "tomorrow morning." He also told the assembled employees that each of them would be offered employment at another of the employer's operations and that the Little Rock manager would contact them individually concerning such employment.

At 11:00 P.M. that same evening, the Union, which had not been informed by the company of the closing, sent a telegram to the company requesting "immediate negotiation in regard to purpose and details concerning closedown of this cafeteria." On April 22, the employer replied that the "closing was effected solely for economic reasons" and offered to furnish documentary evidence to this effect upon request.

On April 23 and 24, the manager of the Little Rock cafeteria and his assistant interviewed all of the employees involved. Each was offered a job at one of the sixteen other cafeterias operated by the employer. Some of the employees interviewed were offered transportation to their new jobs. The Union was neither notified of nor consulted about these offers and arrangements.

On May 3, pursuant to a Union request of April 27, representatives of management met with Union officials. Union officials protested the employer's unilateral action. The company replied that they had handled the matter as they did to save time. No negotiations were attempted at this meeting as the Union had, by that time, determined to press unfair labor practice charges.

The Board found that had the employees not selected the Union as their bargaining representative at the April 19 election, the cafeteria would not have been closed on that day. It, therefore, held that the employer had violated §§ 8(a) (3) and (1) of the Act by closing down the cafeteria and terminating the employees because they had selected the Union as their bargaining representative.

On petitions for enforcement and review of the Board's order to this Court, we remanded to the Board for further proceedings in the light of Textile Workers v. Darlington Mfg. Co., 380 U.S. 263, 85 S.Ct. 994, 13 L.Ed.2d 827 (1965). On remand, further testimony was taken. The Trial Examiner found that Morrison Consolidated, the parent, and Morrison-Little Rock, the subsidiary, constituted a single integrated enterprise; that Morrison-Little Rock was closed with the object of avoiding collective bargaining with the Union; and that this closure constituted a partial closing of a business for the objective of avoiding collective bargaining but was not violative of § 8(a) (3) under the teachings of *Darlington*. He found, however, that the petitioners, by failing to notify the Union of their decision to close the cafeteria and to bargain about that decision and to bargain about the effects of the closure upon the employees, violated §§ 8(a) (5) and (1) of the Act. He recommended that the petitioners be required to bargain with the Union concerning the effects of the closure of the cafeteria upon unit employees, that employees receive limited back pay, that an appropriate cease and desist order be issued, and that the Board retain jurisdiction to give further relief in the event

that the petitioners reopened a cafeteria in Little Rock.

The Board adopted the Examiner's findings, conclusions and recommendations by a two-to-one vote, with Member Zagoria dissenting. The latter stated:

" * * * The Supreme Court's ruling in *Darlington* completely foreclose[s] finding an unlawful refusal to bargain in the instant case, either as to the decision to close or as to the effects of that decision. A finding of an 8(a) (5) violation under *Darlington* depends entirely upon a finding of an 8(a) (3) violation. Hence, the partial closing of a business, like the complete cessation of business, cannot be found to constitute a violation of Section 8(a) (5) in the absence of motivation aimed at achieving the prohibited effect, that is to chill unionism in other parts of the enterprise. * * * It is plain that the reason the [Petitioners] closed this cafeteria was to avoid bargaining with the cafeteria employees' newly designated representative. As the [Petitioners] were lawfully entitled to do this, how can they be required to bargain, when that is the very thing they could lawfully close down to avoid doing?

" * * * Unlike a situation where a union is the certified bargaining representative prior to the decision to close, or where the parties have an established bargaining relationship, the [Petitioners] had no obligation to bargain with the Union prior to the shutdown and, as the shutdown was lawful under *Darlington*, they had no obligation to consult with the Union concerning the shutdown or to remedy its effects on the employees involved. * * * "

The majority answered his contention:

" * * * Member Zagoria's view * * * has previously been rejected by the Board.

"The Board (Member Jenkins not participating) said in *Ozark Trailers*, 161 NLRB at 565:

" ' . . . that holding [Darlington] cannot be relevant to the issue before us which involves Respondents' duty to bargain about the *partial* closing of their business. [*Royal Plating and Polishing Co., Inc.*, 152 NLRB 619, 622.] We perceive nothing in that portion of the *Darlington* decision dealing with the discriminatory partial closing of a business which suggests the inapplicability of the collective-bargaining requirement of the Act to Respondents' decision to close down the Ozark plant. Indeed, as the *Darlington* decision affirms the propriety of the application of Section 8(a) (3) to a partial closing of a business, it would be anomalous to find that Section 8(a) (5) is without governing authority in such situations.' " (Emphasis included and footnotes omitted.)

█ We are inclined to believe that *Darlington* requires that we hold that the petitioners were not obligated to bargain with the Union with respect to its decision to close the cafeteria. Such a holding is also consistent with our earlier opinions in N.L.R.B. v. Drapery Manufacturing Co., 425 F.2d 1026 (8th Cir. 1970), and N.L.R.B. v. Adams Dairy, Inc., 350 F.2d 108 (8th Cir. 1965), cert. denied, 382 U.S. 1011, 86 S.Ct. 619, 15 L.Ed.2d 526 (1966).

█ But we also believe that we can, consistent with *Darlington*, adhere to our holding in *Drapery* and *Adams* that an employer is required to bargain with respect to the effects of a permanent closing of a plant or an identifiable unit thereof.

In so holding, we recognize that we are interfering to a degree with the petitioners' right to close the Little Rock cafeteria. But *Darlington* recognizes the need to balance employer and employee rights (*Id.* 380 U.S. at 269, 85 S.Ct. 994), and we feel that such a balancing requires that employees have the right to have their representative bargain for them as to the effect the closing will have on them even though

such bargaining may place some burdens on the employer.

■ Subsequent to oral argument and after our decision in *Drapery*, the petitioners filed a memorandum attempting to distinguish this case from *Drapery* on the grounds that, here, the petitioners did in fact bargain with the Union. We have considered the argument and find it to be without merit. The petitioners made certain proposals to employees without consultation with the Union and subsequently met with the Union and explained what it had done, but it never offered to negotiate in good faith over the effects of the closing and such action on their part is required.

We enforce the Board's order insofar as it requires (1) that the petitioners bargain with the Union over the effects of the closing, (2) that the petitioners comply with the Board's back pay order, it being our understanding, from the record and oral argument, that no employee is entitled to receive more than a sum equivalent to what the employee would have earned for a two-week period because the Union failed to request bargaining within five days of the receipt by it of the Trial Examiner's supplemental decision, (3) that the petitioners post the required cease and desist order, and (4) that the Board retain jurisdiction of the matter. We refuse to enforce the order insofar as it requires the employer to bargain over the decision to close the cafeteria.