**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**MIDWEST HANGER CO. and Liberty Engineering Corp., Respondents.**

**No. 76–1261.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 11, 1976.

Decided March 3, 1977.

David A. Fleischer, Atty., N.L.R.B., Washington, D. C., for petitioner; John S.

Irving, Jr., Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Carl L. Taylor, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, and Michael S. Winer, Atty., N.L.R.B., Washington, D. C., on the brief.

John A. McGuinn, Farmer, Shibley, McGuinn & Flood, Washington, D. C., for respondents; Guy Farmer, Washington, D. C., on the brief.

Before LAY, BRIGHT and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

The National Labor Relations Board (Board) petitions for enforcement of its supplemental back pay order issued against Midwest Hanger Company and Liberty Engineering Corporation [1] (Company) directing the Company to pay approximately $112,000 [2] to 17 persons who had been discriminatorily discharged by the Company in violation of sections 8(a)(3) and (1) of the National Labor Relations Act. The ultimate issue raised here concerns the appropriateness of the Board's back pay order. We find, that except for discriminatee Elaine Peukert's award, the Board's back pay order is appropriate.

On October 8, 1971, the Board issued a decision and order, 193 N.L.R.B. No. 85, declaring that the Company had discriminatorily discharged 18 employees and refused to reinstate another employee because of their union activity. The Board ordered reinstatement with back pay for all concerned employees and further entered a bargaining order based upon its finding that the Company's actions precluded the holding of a valid election. This court enforced the Board's order as to 17 of the discriminatees. *NLRB v. Midwest Hanger Co. & Liberty Engineering Corp.*, 474 F.2d 1155 (8th Cir.), *cert. denied*, 414 U.S. 823, 94 S.Ct. 124, 38 L.Ed.2d 56 (1973).

As the parties were unable to agree on the amount of back pay due to the 17 discriminatees, the regional director issued

---

1. The two companies are operated as a single economic entity.

2. This figure does not include the 6% per annum interest charge.

a back pay specification dated June 7, 1974. The Company filed an answer and an amended answer thereto. Thereafter, a hearing was held before an administrative law judge to resolve the issues raised by the Company's answer and to establish the amount of back pay due. Testimony was taken on the Company's contention that it had made a proper offer of reinstatement to certain discriminatees on October 25, 1970, thereby ending the back pay period on that date. Further evidence was introduced concerning the propriety of the formula used by the regional director in computing gross back pay and the Company's contentions that the employment of certain discriminatees would have been terminated during the back pay period because of economic reductions in the work force or excessive absenteeism, and that certain discriminatees had incurred willful losses of earnings by failing to make reasonable efforts to obtain suitable interim employment.

On May 20, 1975, the administrative law judge issued his decision, finding that the 17 discriminatees were entitled to back pay totalling $112,530. The Company filed exceptions and on December 1, 1975, the Board affirmed the rulings, findings, and conclusions of the administrative law judge and ordered the Company to pay the discriminatees the amounts set forth in the administrative law judge's decision. This petition by the Board for enforcement of its supplemental back pay order followed.

We enforce in part and remand in part.

The first issue raised by the Company concerns an offer of reinstatement made on October 25, 1970, by Carl Jones, the president of Midwest Hanger Company. It is undisputed that the back pay period for the discriminatees began when they were discharged in June or July, 1970. The Company contends that the back pay period terminated on October 25, 1970. The Board found, however, that the October 25 offer of reinstatement was not unconditional, thereby holding that the back pay period did not terminate until proper offers of reinstatement were made in November 1973.[3] Our review of the record as a whole convinces us there is substantial evidence to support the Board's findings. *See Universal Camera Corp. v. NLRB,* 340 U.S. 474, 491, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

At the hearing held before the administrative law judge, witnesses for the Company and the general counsel testified generally that on October 22, 1970, the Company's employees went on strike. The next day representatives of the Company, including attorney Stanford Madden, met with representatives of the union to discuss how to end the strike. The parties spent two days reviewing the personnel records of 26 discharged employees. By the morning of October 25, it had been tentatively agreed that 13 employees would be reinstated. Some time during the morning of October 25, Carl Jones, the Company's president, who had been out of town, returned to the plant and was informed of the negotiations. Without knowing which 13 employees were to be reinstated, Jones told the union representatives that he would agree to their reinstatement. William Greathouse, one of the discriminatees, asked whether the reinstated employees would receive back pay. Jones replied that he would never pay back pay and left the meeting. The union committee refused to agree to the Company's proposal, but submitted it to the striking employees who, in turn, rejected it.

It is clear that had the Company's offer of reinstatement been conditioned solely on its refusal to give back pay, as the Company strenuously argues, then the offer of reinstatement would not have been invalidated. *D'Armigene, Inc.,* 148 N.L.R.B. 2, 15 (1964), *enforced as modified,* 353 F.2d

---

**3.** Although the administrative law judge and the Board ruled on the merits of this contention, it was held in the alternative that the issue had been fully litigated in the prior unfair labor practice proceeding. Because we decide this contention on the merits, we find it unnecessary to consider the issue preclusion argument.

It is doubtful, however, that the issue in question was fully litigated by the parties and passed upon by the Board at the earlier proceedings. *See Brown & Root, Inc.,* 132 N.L.R.B. 486, 492–93 (1961), *enforced as modified,* 311 F.2d 447 (8th Cir. 1963).

406 (2d Cir. 1965); *Reliance-Clay Products,* 105 N.L.R.B. 135 (1953). The administrative law judge and the Board, however, found that the Company had placed several other conditions on the offer of reinstatement which did invalidate it.

The record reveals that the Company called five witnesses who testified in essence that there were no conditions placed on the offer of reinstatement made by Carl Jones on October 25, 1970, or by anyone else during the negotiations.[4] In direct contradiction, however, was the testimony of two witnesses called by the general counsel. For example, Harry Andrew, a former representative for the United Steel Workers of America, and called as a witness by the general counsel, testified that at the beginning of the negotiations on October 23, 1970, Stanford Madden, the Company's attorney, stated to the union negotiating committee that something would have to be done in regard to the pending unfair labor practice charges. Andrew further testified that on October 25, 1970, at approximately the same time Carl Jones made the offer of reinstatement, Madden again stated to the committee that something would have to be done with the pending charges.[5] William Greathouse, one of the discriminatees who was also a member of the union negotiating committee and called as a witness by the general counsel, corroborated Andrew's testimony.

The administrative law judge found the testimony of Andrew and Greathouse to be straightforward and consistent. Furthermore, he found that three of the five witnesses called by the Company had made prior statements which were somewhat inconsistent with their testimony.[6] As this court has stated:

██ The rule in this Circuit is that "the question of credibility of witnesses and the weight to be given their testimony" in labor cases is primarily one for determination by the trier of facts. This Court is not the place where that question can be resolved, unless it is shocking to our conscience.

*NLRB v. Morrison Cafeteria Co. of Little Rock,* 311 F.2d 534, 538 (8th Cir. 1963) (citations omitted). Although this court has stated in *NLRB v. Payless Cashway Lumber Store of South St. Paul, Inc.,* 508 F.2d 24, 28 (8th Cir. 1974), that this rule is not to be applied mechanically so as to compel us to sustain any finding concerning conflicting testimonial evidence, here the record as a whole supports the credibility findings of the administrative law judge and the Board. Accordingly, we refuse to disturb the Board's finding that the Company conditioned its offer of reinstatement of October 25, 1970, upon the dropping of the unfair labor practice charges.[7] It follows that the back pay period did not terminate on October 25, 1970. *See NLRB v. St. Marys Sewer Pipe Co.,* 146 F.2d 995 (3d Cir. 1945); *Denver Fire Reporter and Protective Co.,* 119 N.L.R.B. 1187, 1188 (1957).

██ The Company secondly contends that the Board erred in finding that certain discriminatees would not have been terminated for economic reasons during the back pay period.[8] It is a well settled principle

4. Although the Company argues that only the words spoken by Jones should be considered as the offer, under the totality of the circumstances we conclude that any conditions previously included by representatives of the Company were implicit in Jones' offer of reinstatement.

5. The record further reflects that the union committee reported to the striking employees that part of the offer included dropping the charges pending against the Company.

6. The administrative law judge noted that one Company witness had testified at a prior hearing that an agreement had been struck to drop the pending charges. At the current hearing the witness recanted and stated that nothing had been said about dropping the charges.

7. The administrative law judge found that the Company had further conditioned its offer of reinstatement by requiring the termination of the strike, improvement in absenteeism by several employees, the changing of jobs by other employees and the taking of a physical examination by one discriminatee. In light of our discussion above, we do not reach these issues.

8. The discriminatees included in this contention are William Greathouse, Ronald Greathouse, David Covey, John Ashby, James Forbis, Joseph DeMent, and John Lankford.

that the burden of proof is on the employer to show that it would not have had work available for a discriminatee due to factors unrelated to the discriminatory discharge. *NLRB v. Mastro Plastics Corp.,* 354 F.2d 170, 176 (2d Cir. 1965), *cert. denied,* 384 U.S. 972, 86 S.Ct. 1862, 16 L.Ed.2d 682 (1966); *Nabors v. NLRB,* 323 F.2d 686, 690 (5th Cir. 1963); *NLRB v. Brown & Root, Inc., supra,* 311 F.2d at 454. *See NLRB v. Madison Courier, Inc.,* 153 U.S.App.D.C. 232, 472 F.2d 1307, 1318 (1972). This principle not only allows the employer the opportunity to show that the otherwise appropriate back pay order would work an undue economic hardship, but also as a practical matter places the burden of going forward on the party having knowledge of the pertinent facts. *NLRB v. Mastro Plastics Corp., supra,* 354 F.2d at 176.

■ Turning to the record before us, it is undisputed that the Company, through a gradual process, experienced an economic reduction from 1970 to 1973. For instance, the Company during this period reduced the number of shifts from three to one. The Company further reduced its overall plant complement from 82 in June 1970 to 38 by the end of 1973. In light of these basically undisputed facts and the Company's contention that all 17 discriminatees would have been terminated at specific intervals in the course of the economic reduction, our inquiry necessarily focuses on the Company's layoff policy. In that regard the Company's plant manager testified that the Company did not follow a strict seniority plan in its layoff policy. Other factors such as ability, work experience, work performance and flexibility were considered. The record further reveals that although some employees were terminated during this period when their specific jobs were eliminated, at least three employees were reassigned to other jobs in the plant. We also note that the Company was advertising for job applicants only a couple of months prior to the discharge of the discriminatees. Thus, even though the Company produced specific evidence concerning the possible termination of each discriminatee for economic reasons, we cannot say that the Board's findings on this issue are not supported by substantial evidence on the record considered as a whole.[9]

■ The Company finally argues that the Board incorrectly found that certain discriminatees did not willfully incur a loss of earnings.[10] In connection with this issue, the Supreme Court has stated:

Making the workers whole for losses suffered on account of an unfair labor practice is part of the vindication of the public policy which the Board enforces. Since only actual losses should be made good, it seems fair that deductions should be made not only for actual earnings by the worker but also for losses which he willfully incurred.

*Phelps Dodge Corp. v. NLRB,* 313 U.S. 177, 197–98, 61 S.Ct. 845, 854, 85 L.Ed. 1271 (1941). The employee must therefore make a reasonable search for interim employment. *NLRB v. Arduini Mfg. Corp.,* 394 F.2d 420, 423 (1st Cir. 1968); *NLRB v. Miami Coca-Cola Bottling Co.,* 360 F.2d 569, 575 (5th Cir. 1966); *NLRB v. Brown & Root, Inc., supra,* 311 F.2d at 452. The burden of proof, however, is on the employer to show the employee's failure to make a reasonable search. *NLRB v. Arduini Mfg. Corp., supra,* 394 F.2d at 423; *Florence Printing Co. v. NLRB,* 376 F.2d 216, 223 (4th Cir. 1967); *NLRB v. Miami Coca-Cola Bottling Co., supra,* 360 F.2d at 575; *NLRB*

---

**9.** The Company also contends that it proved before the administrative law judge that certain discriminatees would have been discharged by the end of 1970 because of their excessive absenteeism. The Board in effect found that the Company did not carry its burden on this issue. Having carefully reviewed the record and considered it as a whole, we cannot say that the Board's finding on this issue is not supported by substantial evidence.

**10.** The discriminatees include James Forbis, Joseph DeMent, Ronald Greathouse, David Covey, Marilyn Kimberlin, Elaine Peukert, June Elliott, John Ashby, Kim Woods, Virgie McCannon, Margaret Buckley, and Sharon Meier.

*v. Brown & Root, Inc., supra,* 311 F.2d at 454.

The Board in effect found that the Company did not meet its burden in proving that the discriminatees willfully incurred a loss of earnings. Although the testimony presents very close questions concerning several of the discriminatees, except for Elaine Peukert, we cannot say that the Board's findings are not supported by substantial evidence on the record considered as a whole.[11]

Ms Peukert testified that from November 6, 1972, to January 22, 1973, she was laid off from her employment at Whitaker Cable. She further testified that she did not look for work during the layoff period because she knew that she would eventually be recalled. Under these circumstances, since by her own admission she was not in the job market from November 6, 1972, to January 22, 1973, this period must be excluded from the back pay computation.

After carefully considering each of the Company's contentions of error, we order, with the exception of the Peukert back pay award, enforcement of the Board's entire back pay order. The Peukert award is remanded to the Board for further proceedings not inconsistent with this opinion.

Enforced in part. Remanded in part.

---

11. We note that the administrative law judge reduced the back pay of ten discriminatees for numerous reasons.