McCANN STEEL COMPANY, INC., Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 76–1857.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 15, 1977.

Decided Feb. 21, 1978.

Charles Hampton White, Cornelius, Collins, Higgins & White, Nashville, Tenn., for petitioner.

Elliott Moore, Deputy Associate Gen. Counsel, National Labor Relations Board, Washington, D. C., Raymond A. Jacobson, Director, Region 26, N.L.R.B., Memphis, Tenn., for respondent.

Before WEICK, EDWARDS and CELEBREZZE, Circuit Judges.

CELEBREZZE, Circuit Judge.

This cause is before this Court for the fourth time. On April 21, 1971, Respondent, National Labor Relations Board (NLRB) found that Petitioner, McCann Steel Company (McCann), discriminatorily discharged J. C. Hindsley, in violation of § 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1). This Court granted enforcement of the NLRB order in an unpublished order dated May 12, 1972. The NLRB then conducted a supplemental hearing and found that McCann owed Hindsley $4,967, plus interest and less taxes, in back pay. This Court denied enforcement of the back pay order and remanded the cause to the NLRB for clarification. *McCann Steel Co. v. N. L. R. B.*, 489 F.2d 1328 (6th Cir. 1974).

On remand, the NLRB considered no additional evidence and simply reaffirmed its $4,967 back pay finding. The NLRB then moved this Court for "entry of a supplemental judgment" to enforce its reaffirmance of the back pay determination. In an unpublished order dated May 16, 1975, this Court denied the NLRB motion. That order read, in its entirety, as follows.

We consider the motion of the National Labor Relations Board for entry of a supplemental judgment making definite the amount of backpay due J. C. Hindsley as determined by the Board in its supplemental Decision and Order of May 18, 1973 and reaffirmed in its Decision on Review of June 28, 1974. The Board, on May 18, 1973 issued a Supplemental Decision and Order (203 NLRB No. 115) finding the company to be indebted to J. C. Hindsley for backpay in the amount of $4,967, with interest, less tax withhold-

ings required by law. The company claimed that Hindsley willfully incurred a loss of earnings by failing to work the full number of hours he could have for an interim employer and by taking leave of absence from his interim employment.

We denied enforcement and remanded the matter for clarification since it was unclear whether the Board considered the fact that Hindsley's fellow draftsmen in the interim employment worked overtime during several pay periods when Hindsley failed to work the basic 40 hours, and whether the Board allowed any credit against the gross backpay award for self-employment. *McCann Steel Company, Inc. v. N. L. R. B.*, 489 F.2d 1328 (1974).

Upon remand, the Board considered no additional evidence, and the reason why Hindsley did not work the basic 40 hours when other draftsmen in his classification worked overtime remains unexplained. Nevertheless, the Board offers a surmise as an explanation and concludes that any uncertainty should be resolved against the respondent as the wrongdoer "whose conduct made certainty impossible." The Board properly assigned to the employer the ultimate burden of proving the willful loss of earnings asserted as a defense but failed to assign to the employee the burden of going forward with the evidence to show why he did not work 40 hours once the evidence showed that his fellow draftsmen were working overtime. The allocation of the burden of producing evidence in such a case is upon the party having knowledge of the facts. *See NLRB v. Mastro Plastics Corporation*, 354 F.2d 170 (2d Cir. 1965).

Accordingly, the Board's order is not supported by substantial evidence on the record considered as a whole. *Universal Camera Corp. v. N. L. R. B.*, 340 U.S. 474 [71 S.Ct. 456, 95 L.Ed. 456] (1951).

Also, since Hindsley voluntarily left available interim employment to go into business for himself, respondent cannot be made to subsidize his enterprise if it fails to produce the income that the same expenditure of labor for his interim employer would yield.

For the foregoing reasons, the motion is hereby DENIED.

■ The NLRB treated the denial of its motion as a second remand and held another supplemental hearing and took additional evidence. For reasons largely not pertinent to this appeal, but mainly in conformity to the above-quoted language, the NLRB made a reduced back pay finding of $1,922, plus interest and less taxes. 224 N.L.R.B. No. 82. McCann petitions for review of this supplemental order, and the NLRB cross-petitions for enforcement, raising the following issues. First, did this Court's May 16, 1975, order denying the NLRB's motion for entry of supplemental judgment preclude the NLRB from conducting further hearings on the back pay issue? Second, if further hearings were not precluded, did the NLRB erroneously calculate the amount of the back pay award? We answer "no" and "yes," respectively.

McCann argues that this Court's May 16, 1975, order ended this case "once and for all." It claims that the NLRB failed in its chance to show that its decision was supported by substantial evidence and that principles of *res judicata* and fundamental fairness preclude further litigation of the issue. While conceding that the May 16, 1975, order is not a paradigm of clarity, we disagree with McCann's interpretation of it. We read that order as simply denying the NLRB's motion for entry of supplemental judgment and no more, thus leaving operative the prior remand to the NLRB. It is the law of this case that Hindsley was illegally discharged and that he is due some amount of back pay. *NLRB v. Reynolds*, 399 F.2d 668, 669 (6th Cir. 1968); *NLRB v. Mastro Plastics Corp.*, 354 F.2d 170, 178 (2d Cir. 1965), cert. den. 384 U.S. 972, 86 S.Ct. 1862, 16 L.Ed.2d 682 (1966). *Cf. Albemarle Paper Co. v. Moody*, 422 U.S. 405, 420 n.12, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). It would be inequitable to punish Hindsley for the shortcomings of the NLRB. *NLRB v. J. H. Rutter-Rex Mfg. Co.*, 396 U.S. 258, 90 S.Ct. 417, 24 L.Ed.2d 405 (1969).

■ McCann next argues that the NLRB's calculation of back pay was erroneous. This claim stems from the fact that Hindsley regularly worked overtime at McCann and the NLRB's calculation of the pay he would have received at McCann, in determining back pay owed, took this into account. Yet while overtime was readily available to Hindsley at his interim employer,[1] he did not always choose to take advantage of it. The NLRB did not take the available overtime completely into account in determining what Hindsley earned or could have earned for purposes of reducing the back pay owed by McCann.[2] McCann argues that it was improper for the NLRB to consider overtime worked by Hindsley at McCann yet ignore overtime available at his interim employer in calculating back pay. We agree.

Back pay awards are made by the NLRB pursuant to § 10(c) of the National Labor Relations Act, 29 U.S.C. § 160(c). They are generally calculated by subtracting from what an employee would have earned but for his wrongful discharge the amount the employee actually earned in the interim between the discharge and the offer of reinstatement. The award is also reduced by any willful loss of earnings by the employee. *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 197–98, 61 S.Ct. 845, 85 L.Ed. 1271 (1941); *Oil, Chemical and Atomic Workers International Union, AFL–CIO v. NLRB*, 178 U.S.App.D.C. 301, 305, 547 F.2d 598, 602

(1976), *cert. den.*, 429 U.S. 1078, 97 S.Ct. 823, 50 L.Ed.2d 798 (1977); *Heinrich Motors, Inc. v. NLRB*, 403 F.2d 145, 148 (2d Cir. 1968). A willful loss of earnings includes the refusal of the employee to "accept substantially equivalent employment." *Mastro Plastics*, 354 F.2d at 174 n.3; *O. C. & A. Workers*, 178 U.S.App.D.C. at 305–06, 547 F.2d at 602–03; *NLRB v. Nickey Chevrolet Sales, Inc.*, 493 F.2d 103, 107 (7th Cir.), *cert. den.* 419 U.S. 834, 95 S.Ct. 60, 42 L.Ed.2d 60 (1974); *NLRB v. Madison Courier, Inc.*, 153 U.S.App.D.C. 232, 242, 472 F.2d 1307, 1317 (1972).

We believe that "substantially equivalent employment" refers to the hours worked at the interim employer as well as the nature of the work there.[3] Thus Hindsley refused to accept "substantially equivalent employment" when he refused to work the same number of hours at his interim employer as he had worked at McCann. This was a willful loss of earnings.[4] The NLRB should calculate a constructive interim earnings figure based upon the amount of pay Hindsley would have received at his interim employer had he always worked the same number of hours, including overtime, he averaged at McCann to the extent those hours were available at the interim employer. The NLRB should then deduct the new constructive interim earnings figure from the amount Hindsley would have earned at McCann in calculating the back pay award.[5]

---

1. Hindsley's interim employer, the company for which he worked in the interim between his illegal discharge and McCann's offer of reinstatement, was Englert Engineering Company.

2. During the period in dispute Hindsley actually worked less than a full forty hour week at his interim employer but the NLRB calculated a "constructive interim earnings figure" based upon what he would have earned if he had worked a forty hour week. It was the NLRB's failure, *inter alia*, to compute any constructive interim earnings figure, as opposed to actual earnings, which led to this Court's prior denial of enforcement and denial of the motion for entry of supplemental judgment.

3. The nature of the work, drafting, was essentially identical at McCann and Hindsley's interim employer, Englert Engineering Company.

4. McCann had the burden of proof to show a willful loss of earnings as an affirmative defense to its back pay liability. *Reynolds*, 399 F.2d at 669. *See also O. C. & A. Workers*, 178 U.S.App.D.C. at 306, 547 F.2d at 603; *Madison Courier*, 153 U.S.App.D.C. at 243, 472 F.2d at 1318, and cases cited therein. McCann met that burden here by showing Hindsley's procurement of interim employment and the ready availability of overtime there. In contrast, Hindsley failed to meet his burden, pursuant to this Court's May 16, 1975, order, to proffer a legally sufficient excuse for his short hours at his interim employer.

5. As stated in the May 16, 1975, order, the award should still ignore reduced earnings caused by Hindsley's self-employment when he left his interim employer.

This result is consistent with the general purpose of back pay awards, which is "to restore the employee to the status quo he would have enjoyed if the discriminatory discharge had not taken place." *NLRB v. United States Air Conditioning Corp.*, 336 F.2d 275, 277 (6th Cir. 1964). *NLRB v. Robert Haws Co.*, 403 F.2d 979, 980 (6th Cir. 1968). *Cf. Rutter-Rex*, 396 U.S. at 263, 90 S.Ct. 417. Here the status quo found Hindsley regularly working overtime at McCann. It is therefore equitable to calculate deductions from his back pay award on the same basis. The result reached by the NLRB would do more than restore the status quo since it would put Hindsley in the same economic position he would have been in but for the wrongful discharge but with a lesser expenditure of time.[6]

The NLRB argues that Hindsley's efforts at mitigation required only "reasonable exertions in this regard, not the highest standard of diligence." *NLRB v. Arduini Mfg. Co.*, 394 F.2d 420, 423 (1st Cir. 1968). *See also NLRB v. Midwest Hanger Co.*, 550 F.2d 1101, 1105 (8th Cir. 1977), and cases cited therein. We agree but feel that Hindsley's working the same number of hours for his interim employer as he did for McCann is necessarily a reasonable exertion.

The petition for review is granted and the cross-petition for enforcement is denied. The cause is remanded to the NLRB for proceedings consistent with this opinion.

Costs taxed to the NLRB.

EDWARDS, Circuit Judge, dissenting.

This is a back pay case which began April 23, 1971, when the National Labor Relations Board found that Hindsley, a draftsman for petitioner McCann, was unlawfully discharged. In 1972 this court enforced the Board's order requiring petitioner McCann to put him back to work and McCann has done so. Ever since then, the parties have been litigating the Board's Supplemental Decision awarding back pay. After two

remands by this court, the Board has now ruled that the back pay award be reduced to $1,922, in accordance with this court's instructions.

I think we ought now, without still another remand, to enforce the Board's order and end this case.

The Board's computation is supported by substantial evidence and its policy requiring "reasonable exertion" to mitigate damages and not the highest standard of diligence has support in the Courts of Appeals. *See National Labor Relations Board v. Arduini Manufacturing Corp.*, 394 F.2d 420, 423 (1st Cir. 1968). *See also National Labor Relations Board v. Reynolds*, 399 F.2d 668, 669–70 (6th Cir. 1968).

The Supreme Court spelled out this court's function in this area of administrative review:

We start with the broad command of § 10(c) of the National Labor Relations Act, as amended, 61 Stat. 147, 29 U.S.C. § 160(c), that upon finding that an unfair labor practice has been committed, the Board shall order the violator "to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies" of the Act. This Court has stated that the remedial power of the Board is "a broad discretionary one, subject to limited judicial review." *Fibreboard Corp. v. NLRB*, 379 U.S. 203, 216 [, 85 S.Ct. 398, 406, 13 L.Ed.2d 233] (1964).

The legitimacy of back pay as a remedy for unlawful discharge or unlawful failure to reinstate is beyond dispute, *Mastro Plastics Corp. v. NLRB*, 350 U.S. 270, 278 [, 76 S.Ct. 349, 355, 100 L.Ed. 309] (1956), and the purpose of the remedy is clear. "A back pay order is a reparation order designed to vindicate the public policy of the statute by making the employees whole for losses suffered on account of unfair labor practice." *Nathanson v. NLRB*, 344 U.S. 25, 27 [, 73 S.Ct. 80, 82,

---

6. This is the theoretical result of the NLRB position. Hindsley actually worked less than a full forty hour week, *see* note 2, *supra*, and lost money by leaving his interim employer to try

his hand at self-employment, *see* note 5, *supra*. The NLRB treated the case, however, on its third try, as if Hindsley worked a full forty hour week at his interim employer.

97 L.Ed. 23] (1952). As with the Board's other remedies, the power to order back pay "is for the Board to wield, not for the courts." *NLRB v. Seven-Up Bottling Co.*, 344 U.S. 344, 346 [, 73 S.Ct. 287, 289, 97 L.Ed. 377] (1953). "When the Board, 'in the exercise of its informed discretion,' makes an order of restoration by way of back pay, the order 'should stand unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act.'" *Id.*, at 346–347, 73 S.Ct. [287] at 289.

*National Labor Relations Board v. Rutter-Rex Mfg. Co.*, 396 U.S. 258, 262–63, 90 S.Ct. 417, 419, 24 L.Ed.2d 405 (1969).