NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

FIRE ALERT COMPANY, Respondent.

No. 76–1662.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Nov. 16, 1977.

Decided Dec. 9, 1977.

Andrew F. Tranovich, Atty., N. L. R. B., Washington, D. C. (John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Carl L. Taylor, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, and William R. Stewart and John C. Rother, Attys., N. L. R. B., Washington, D. C., on the brief), for petitioner.

Martin Semple, Denver, Colo. (Robert G. Good, Denver, Colo., and Kenneth R. Stettner, Englewood, Colo., on the brief), for respondent.

Before McWILLIAMS, BREITENSTEIN and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

In this proceeding the NLRB seeks enforcement of its order issued against Fire Alert Company on March 19, 1976.

The conflict had its beginnings in October 1971, at which time the employees of Fire Alert Company went on strike. The strike ended in January 1972, at which time the strikers all made unconditional offers to return to work. In March 1972, the company began to offer reinstatement to the strikers. It failed, however, to offer reinstatement to Paula M. Taylor and Barbara Woolfolk.

Proceedings were had before the Board concerning the charge that the company had violated §§ 8(a)(1) and 8(a)(3) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1) and 158(a)(3) because of its failure to reinstate Taylor and Woolfolk. An order was entered requiring that Taylor and Woolfolk be reinstated with back pay.[1] This latter order is not before us for review. The single issue is the amount of back pay which is owing to Taylor and Woolfolk.

It is the order of March 19, 1976, contained in the Board's Supplemental Decision and Order,[2] which is the subject of the instant review and enforcement effort. The Board in that Order fixed March 15, 1972 as the commencement of the back pay period for Woolfolk, and April 17, 1972 as the commencement date for Taylor. In determining that these were the proper dates, the Board used the dates when the two employees would have been reinstated had the strikers been taken back in order of seniority. The company contends that the correct date for back pay purposes for both employees was March 30, 1973, which was the date on which the company began to hire outsiders in preference to Woolfolk and Taylor. The company acknowledges the presence of discrimination, but maintains that the first act of discrimination against the strikers occurred when the outsiders were employed and the two old employees were rejected, and hence no back pay is owed for any prior period.

The Board does not dispute that the company had a valid basis for delaying reinstatement of the strikers generally. The sole dispute is the alleged discrimination in

not considering Taylor and Woolfolk along with the other strikers when the strike ended and positions became available. The Board's position is that in recalling other strikers to jobs for which Taylor and Woolfolk were qualified, the company acted with discriminatory intent.

■ In the decision of the Administrative Law Judge rendered May 15, 1973 no such discrimination was found. He concluded that no unfair labor practice had been committed by the company. The Board reversed this conclusion. It relied on the March 30, 1973 hiring of outsiders and did not comment on the Administrative Law Judge's finding that there had been no discrimination among the strikers. It was unnecessary for the Board to make a finding on this question of fact, for the hiring of outsiders clearly established an unfair labor practice under the standards which are set forth in *NLRB v. Fleetwood Trailer Co.,* 389 U.S. 375, 88 S.Ct. 543, 19 L.Ed.2d 614 (1967), and *NLRB v. Mackay Radio & Telegraph Co.,* 304 U.S. 333, 345–46, 58 S.Ct. 904, 82 L.Ed. 1381 (1938). Whether there had been, in addition, earlier discrimination was relevant to the question of the amount of back pay, a question which the Board was not required to consider at that time.

On June 24, 1975, a different Administrative Law Judge rejected the General Counsel's contention that there had been discrimination among the strikers in calling them back and held, therefore, that the back pay period should begin as of the date when the company maintained that it should, March 30, 1973. This was based solely on the interpretation of the Board's decision of December 13, 1973.

■ The Board reversed the decision of the second Administrative Law Judge, stating that he had clearly erred in his interpretation of the Board's previous decision. The Board then found that there had been discrimination by the company prior to March 30, 1973. The company's position was that it did not have a seniority system

1. 207 NLRB No. 140 (1973).

2. 223 NLRB No. 28 (1976).

and could, therefore, recall the strikers using its own order of recall. Admittedly, Woolfolk had the most seniority of any of the employees on strike. Taylor was also a senior employee. The company also asserted that Woolfolk and Taylor had the lowest priority because they had not filled out individual requests to return to work. However, a general request was made by the union on behalf of all strikers, so this reason lacked substantiality. Furthermore, the fact that their jobs were eliminated does not have any tendency to eliminate arbitrariness or discrimination. Regardless of whether their jobs were eliminated, Woolfolk and Taylor were entitled to non-discriminatory consideration for reinstatement to other jobs for which they were qualified. Both were qualified by long service and experience for numerous jobs for which other strikers were recalled. Woolfolk was the oldest employee in the plant and was qualified to do most every job in the plant and had taught other employees various jobs. Similarly, Taylor was an experienced senior employee and had performed numerous production functions. There is no claim that the strikers who were reinstated were not qualified, and the employer is allowed to choose among qualified strikers so long as he acts in a non-discriminatory manner.

The case of *NLRB v. Mackay Radio & Telegraph Co.*, 304 U.S. 333, 345–46, 58 S.Ct. 904, 82 L.Ed. 1381 (1938), bears limited similarity to our case. In *Mackay* there was the added feature that discrimination was based upon union activities. Six of eleven strikers were taken back in the *Mackay* case. On the other hand, five were rejected on account of their union activities. In *Mackay*, as in this action, the excuse

given was that they had not applied timely. The Supreme Court labeled this as afterthought and not the true reason and noted that the company could have refused reinstatement on the ground of skill or ability, but that it had not done so. The Court said that it might have resorted to any one of a number of methods for determining which of the striking employees would have to wait, but that the company had not followed a rational basis and that it had discriminated. Here, similarly, the strikers were all qualified, but the circumstances indicated that Taylor and Woolfolk were particularly well qualified since they were senior employees and had broad experience in the plant.

■ We agree with the position taken by the Board that once it has been established in back pay proceedings that there has been discrimination among strikers such as that which was found in this case, the burden is then on the company to establish any exceptions that it may have to the back pay formula used by the General Counsel. *See NLRB v. Mastro Plastics Corp.*, 354 F.2d 170 (2d Cir. 1965), cert. denied, 384 U.S. 972, 86 S.Ct. 1862, 16 L.Ed.2d 682 (1966)[3] and the cases there cited. To the same proposition is *NLRB v. Midwest Hanger Co.*, 550 F.2d 1101, 1104–05 (8th Cir.), cert. denied, ── U.S. ──, 98 S.Ct. 112, 54 L.Ed.2d 90 (1977). No credible evidence was offered by the company in opposition to the evidence showing seniority, qualifications and experience favoring Taylor and Woolfolk. Thus, the *prima facie* case that these strikers were discriminated against stands.

There exists an underlying suggestion that union activism on the part of Taylor

**3.** In that case the opinion of Judge Lumbard, writing for the Second Circuit panel, contained the following:

> However, the Board has long placed the burden of alleging and proving these "affirmative defenses" on the employer, see, e. g., *Southern Silk Mills, Inc.*, 116 NLRB 769 (1956), and this allocation of the burden of proof has been consistently upheld. Under the Board's theory since the General Counsel sustained his burden of proving an unfair labor practice in the original proceedings against respondents, his only burden in the

> back pay proceedings was to introduce evidence of the *gross* back pay due, as calculated in the back pay specification.
>
> \* \* \* \* \* \*
>
> We agree with the Board's contention that the burden of going forward with evidence of job availability at the employer's plant should be placed on the employer. In the first place, the burden of going forward normally falls on the party having knowledge of the facts involved.
>
> 354 F.2d at 175–76.

and Woolfolk was the reason for the failure of the company to reemploy them. The difficulty with this is the lack of evidence to support such a charge. There is but one item of evidence, and that is that on October 23, 1971, the second day of the strike, the company president said to Woolfolk that if it had not been for her the strike would not have occurred. The Board relied on this testimony in its original decision, but in the back pay proceeding the Board relied on the seniority of Taylor and Woolfolk plus the abilities and experience of these two strikers to perform various jobs in the plant. The issue of union activism was not considered by the Board and hence we do not seek to review it.

We hold that the circumstances were sufficient to establish that there was discriminatory action in denying reemployment to the two strikers and in preferring the other strikers. This, plus the dearth of evidence establishing a rational explanation by the company for this action, was sufficient to support the Board's order.

We conclude that the Board's order should be and the same is hereby enforced.