George A. ANGLE, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

George A. ANGLE d/b/a Kansas Refined Helium Company, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

Nos. 79–1548, 80–2057.

United States Court of Appeals, Tenth Circuit.

July 16, 1982.

Marvin J. Martin, Wichita, Kan. (W. Stanley Churchill, Wichita, Kan., with him

on the briefs), Martin, Cooper, Churchill & Friedel, Wichita, Kan., for petitioner.

David S. Fishback, Washington, D. C. (Carol A. De Deo, Norton J. Come, Acting Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, and Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., Washington, D. C., with him on the brief), for respondent in No. 79–1548.

Jolane A. Findley, William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, and Elliott Moore, Deputy Associate Gen. Counsel, Washington, D. C., on the brief for respondent in No. 80–2057.

Before SETH, Chief Judge, McKAY, Circuit Judge, and CHRISTENSEN, District Judge.*

McKAY, Circuit Judge.

George A. Angle, former sole proprietor of Kansas Refined Helium Company, has petitioned this court to review and set aside two orders of the National Labor Relations Board. The first of these orders, entered as a summary judgment, was based on the Board's decision that Mr. Angle had violated §§ 8(a)(1) and (4) of the National Labor Relations Act (the Act), 29 U.S.C. §§ 158(a)(1) and (4), by maintaining a civil action for malicious prosecution against his former employee, Arel Rodgers. Mr. Angle contends that there are genuine issues of material fact that make the Board's grant of summary judgment improper. The Board's second order was issued to enforce payment of the amount of backpay it had determined was due Mr. Rodgers. Mr. Angle contends that Mr. Rodgers is not due any backpay, but that, even if backpay is due Mr. Rodgers, the Board has incorrectly determined the amount. The Board has cross-applied for enforcement of its orders. We have jurisdiction under §§ 10(e) and (f)

* Honorable A. Sherman Christensen, Senior United States District Judge, District of Utah, sitting by designation.

of the Act, 29 U.S.C. §§ 160(e) and (f), to review these matters.[1]

These lengthy proceedings began in 1966, when charges of unfair labor practices were first filed against Kansas Refined Helium Company while Mr. Angle was sole proprietor. These charges involved Mr. Angle's anti-union activity, including the discharge of six employees, one of whom was Mr. Rodgers. While these charges were pending, the United States District Court for the District of Kansas, at the Board's request, issued an injunction under § 10(j) of the Act, 29 U.S.C. § 160(j), directing Mr. Angle to reinstate the discharged employees pending the Board's disposition of the charges against him. *Sacks v. Angle*, 55 Lab.Cas. (CCH) ¶ 11,865 (D.Kan.1967). On July 19, 1967, pursuant to the federal district court's order, Mr. Rodgers was reinstated, but was placed in a "training position," rather than in his former position as a "senior operator." On July 20, 1967, the Board filed a petition for civil and criminal contempt in federal district court, on the ground that such reinstatement did not comply with the court's order.

On August 28, 1967, we sustained on appeal the district court's injunction, excepting its application to two senior operators, one of whom was Mr. Rodgers. Since the Board had not overruled its Regional Director's determination that senior operators were supervisors, we held that their reinstatement was not necessary pending the Board's final order. *Angle v. Sacks*, 382 F.2d 655, 661 (10th Cir. 1967). Following our decision, the federal district court dismissed as moot the Board's petition for civil contempt and, after a hearing, dismissed the petition for criminal contempt as well.

On September 12, 1967, the Board's trial examiner issued a preliminary decision in the original unfair labor practice charge. He concluded that the two senior operators, including Mr. Rodgers, were not supervisors and therefore were protected by the Act; he also concluded that Mr. Angle had committed numerous violations of the Act. He recommended complete reinstatement of the six discharged employees with backpay.

On October 2, 1967, Mr. Angle discharged Mr. Rodgers for discussing the trial examiner's decision at work and for giving false testimony to the Board. Mr. Rodgers filed charges with the Board. A complaint issued, and, on July 2, 1968, the trial examiner found that Mr. Angle's discharge of Mr. Rodgers violated the Act.

On June 25, 1969, the Board adopted the findings and recommendations of its two trial examiners; the Board found that unfair labor practices had been committed, 176 N.L.R.B. No. 115 (1969), and that Mr. Rodgers had been discharged in violation of the Act. 176 N.L.R.B. No. 116 (1969). The United States Court of Appeals for the District of Columbia Circuit granted enforcement of the Board's orders in all respects. *Oil, Chemical & Atomic Workers International Union v. NLRB*, 445 F.2d 237 (D.C.Cir.1971), *cert. denied*, 404 U.S. 1039, 92 S.Ct. 713, 30 L.Ed.2d 730 (1972). However, Mr. Angle continued to engage in activity that violated the Act. Among other things, he refused to reinstate Mr. Rodgers to his previous position or its equivalent, as ordered, but instead placed him in a lower position. On July 12, 1972, Mr. Angle discharged Mr. Rodgers for acting as a fellow employee's representative at a disciplinary hearing.

On July 12, 1972, the Board petitioned the United States Court of Appeals for the District of Columbia to hold Mr. Angle in

1. Each order was appealed separately (Nos. 79–1548 and 80–2057). Both appeals have been before us at an earlier time. By order dated March 2, 1981, we transferred the appeals to the United States Court of Appeals for the District of Columbia Circuit, subject to acceptance of transfer by that court. Each case involved enforcement of an earlier order of the District of Columbia Circuit, and we believed that the interests of justice and sound judicial administration were promoted by transfer. However, by order dated May 8, 1981, the District of Columbia Circuit retransferred the cases to this court. On remand, we consolidated the two cases for disposition.

contempt and to order Mr. Rodgers' reinstatement pending adjudication of the contempt action. Pursuant to court order, Mr. Rodgers returned to work in September 1972. On May 22, 1973, Mr. Rodgers left his employment, claiming that he could not work under conditions not in compliance with the court's order. An issue as to his constructive discharge was added to the matters to be considered by the court.

On March 14, 1975, a special master, whom the court had appointed, found that the Board had failed to show that Mr. Angle was in contempt of the court's order. However, reversing nearly all of its master's findings, the court held that Mr. Angle had violated the Act and the court's order in various ways, including failing to reinstate Mr. Rodgers to a proper position and discharging him in July 1972. The court did not overturn its master's finding that Mr. Rodgers was not constructively discharged in May 1973. The master had found that Mr. Rodgers, following his reinstatement in July 1972 pursuant to court order, had been engaged in efforts to fabricate evidence of Mr. Angle's noncompliance with various provisions of the court's order, and the Board had failed to demonstrate to the court that this finding was clearly erroneous. The court did not order reinstatement of Mr. Rodgers, but did award him backpay which had accrued prior to May 22, 1973. *Oil, Chemical & Atomic Workers International Union v. NLRB,* 547 F.2d 575 (D.C.Cir.1976), *cert. denied,* 431 U.S. 966, 97 S.Ct. 2923, 53 L.Ed.2d 1062 (1977). The court found Mr. Angle in civil contempt and detailed in its order the steps he must take to purge himself of contempt. To assure compliance, the court imposed a fine to be levied for continuing violations of its order. *Id.* at 596–98. The court also retained jurisdiction to take action deemed appropriate. *Id.* at 598.

The Board then set about to determine the amount of backpay due Mr. Rodgers. On January 4, 1978, while a hearing on the matter was pending, Mr. Angle filed an action against Mr. Rodgers in Kansas state court for malicious prosecution. The action was based on Mr. Rodgers' part in causing the contempt proceeding initiated by the Board against Mr. Angle on July 12, 1972. On January 8, 1978, Mr. Rodgers filed charges with the Board alleging that the malicious prosecution action violated the Act. The Board then initiated contempt proceedings in the District of Columbia Circuit Court of Appeals and issued an unfair labor practice complaint. Mr. Angle's action was removed to federal district court which, on January 17, 1979, stayed the action until the Board issued its decision on the unfair labor practice charge. On June 4, 1979, the Board in summary judgment found that Mr. Angle's filing of the malicious prosecution action violated the Act. 242 N.L.R.B. No. 112 (1979). The Board ordered Mr. Angle to halt prosecution of the action and to reimburse Mr. Rodgers for legal expenses incurred by him in his defense of it. Subsequently, on September 30, 1980, after a hearing, the Board determined that Mr. Rodgers was due backpay in the amount of $36,926.18 plus interest of six percent per annum and ordered Mr. Angle to pay him that amount. 252 N.L.R.B. No. 162 (1980).

■ On appeal, Mr. Angle contends that the Board's grant of summary judgment against him, holding that he had committed an unfair labor practice by filing a malicious prosecution action against Mr. Rodgers, was improvidently made. A grant of summary judgment is proper only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. Accordingly, this court must reverse such a grant if it appears from the record that there is an unresolved issue of material fact. All factual inferences drawn from the record are considered in the light most favorable to the existence of such an issue. *Exnicious v. United States,* 563 F.2d 418, 423 (10th Cir. 1977). Mr. Angle alleges that genuine issues of material fact exist, and that he

should have been given a hearing in which to present evidence on those issues.

Mr. Angle's malicious prosecution action was premised on Mr. Rodgers' involvement in the Board's initiation of civil contempt proceedings against him on July 12, 1972. In his complaint, Mr. Angle alleged that Mr. Rodgers, consistent with prior conduct, had engaged in repeated efforts to impede Mr. Angle's efforts to comply with Board orders and to fabricate evidence of his non-compliance since Mr. Rodgers' reinstatement on March 23, 1972. Mr. Angle believed that, absent Mr. Rodgers' efforts, the Board would not have initiated contempt proceedings against him.

 As a general rule, it is not an unfair labor practice for an employer to file a civil action against a former employee who has filed charges with the Board. *Power Systems, Inc. v. NLRB*, 601 F.2d 936, 939 (7th Cir. 1979) (citing the rule in *Clyde Taylor Co.*, 127 N.L.R.B. 103 (1960)). However, as an exception to the *Clyde Taylor* rule, it is an unfair labor practice for an employer to bring a civil action with an unlawful objective, such as retaliation for filing charges with the Board. 601 F.2d at 939. *See West Point Pepperell, Inc.*, 200 N.L.R.B. No. 147 (1972). If the employer had no reasonable basis for filing the civil action, the Board will infer an unlawful objective.[2] On the other hand, an employee can lose the protection of the Act by intentionally filing false charges and fabricating evidence. *NLRB v. Brake Parts Co.*, 447

F.2d 503, 514 (7th Cir. 1971); *Iowa Beef Packers, Inc. v. NLRB*, 331 F.2d 176, 185 (8th Cir. 1964). Under such circumstances, an employer may be justified in bringing a malicious prosecution action.

Since Mr. Angle's civil action seeks damages for conduct which, in the abstract, would be protected activity, the critical issue, in our view, is whether Mr. Rodgers enjoyed the protection of the Act at the time he filed charges with the Board in July, 1972.

Mr. Angle argues that the master's finding, adopted by the court, that Mr. Rodgers had engaged in efforts to fabricate evidence of Mr. Angle's non-compliance with the provisions of the court's order, supports the conclusion that Mr. Rodgers was not protected by the Act and that, accordingly, the filing of a malicious prosecution action against him by Mr. Angle was not an unfair labor practice.

 However, it is clear that the unprotected activity acknowledged by the court commenced no earlier than September 1972. "The Master's findings indicate that *following this court's temporary reinstatement order* [in September, 1972] Rodgers ... engaged in attempts to manufacture evidence on which to base contempt charges against Angle." *Oil, Chemical, & Atomic Workers International Union v. NLRB*, 547 F.2d 575, 593 n.19 (1976) (emphasis added). In determining whether Mr. Rodgers enjoyed the protection of the Act at the time he filed charges with the Board, the only relevant

---

**2.** In Power Systems, Inc., 239 N.L.R.B. No. 56 (1978), the Board found that the employer lacked a reasonable basis for its civil action and therefore the Board inferred an unlawful objective. On appeal, the Seventh Circuit assumed without deciding that the Board could determine, prior to resolution of the civil action, whether the employer had a reasonable ground, but found, in this case, that the Board's determination of "no reasonable ground" was not supported by substantial evidence. *Power Systems, Inc. v. NLRB*, 601 F.2d 936, 939 (7th Cir. 1979). We think the congressional intent that employees enjoy "complete freedom" to report unlawful conduct to the Board "to pre-

vent the Board's channels of information from being dried up by employer intimidation" would be ill-served by a policy that permitted a civil action to proceed to resolution, before the Board could determine that the action violated the Act and order appropriate relief. *NLRB v. Scrivener*, 405 U.S. 117, 122, 92 S.Ct. 798, 801, 31 L.Ed.2d 79 (1972). Therefore, we hold that the Board properly may examine the record for evidence of a reasonable ground for the employer's civil action and, finding none, may infer an unlawful objective and order appropriate relief, even though the civil action has not yet been resolved.

conduct is that which occurred prior to the filing of the contempt petition by the Board on July 12, 1972. Although the court affirmed the master's finding that Mr. Rodgers lost the protection of the Act at some point after his reinstatement in September 1972, because of improper conduct, it adjudicated every other significant issue raised in the petition against Mr. Angle. The court could not have reached that decision without concluding that Mr. Rodgers' conduct prior to July 12, 1972 was protected. There is an issue as to precisely when, after his reinstatement in September 1972, Mr. Rodgers lost the protection of the Act, but resolution of that issue was not material to disposition of the matter before the Board. It is clear beyond cavil that Mr. Rodgers enjoyed the protection of the Act until at least July 12, 1972. While Mr. Rodgers' subsequent improper conduct warranted the court's refusal to reinstate him, it does not retroactively excuse Mr. Angle for his unfair labor practices committed while Mr. Rodgers enjoyed the protection of the Act. *See NLRB v. Brake Parts Co.*, 447 F.2d 503, 511–515 (7th Cir. 1971); *Iowa Beef Packers, Inc. v. NLRB*, 331 F.2d 176, 185 (8th Cir. 1964).

Accordingly, we hold that the Board correctly determined that summary judgment was appropriate because no genuine issue of material fact existed that would necessitate a hearing. We deny Mr. Angle's petition for relief and grant enforcement of the Board's order (No. 79–1548).

On September 30, 1980, the Board, after a hearing and pursuant to an order of the United States Court of Appeals for the District of Columbia Circuit, determined that Mr. Rodgers was due from Mr. Angle backpay in the amount of $36,926.18 plus interest of six percent per annum. 252 N.L.R.B. No. 162 (1980). Mr. Angle was ordered to pay that amount. He contends, however, that Mr. Rodgers is not due any backpay, but that, in the event that he is, the Board has miscalculated the amount due.

■ The purpose of a backpay order is to vindicate the public policy of the Act by making an employee whole for any losses suffered because of an employer's unfair labor practice. *Nathanson v. NLRB*, 344 U.S. 25, 27, 73 S.Ct. 80, 82, 97 L.Ed. 23 (1952). The Board's power to order backpay is "a broad discretionary one, subject to limited judicial review." *Fibreboard Corp. v. NLRB*, 379 U.S. 203, 216, 85 S.Ct. 398, 405, 13 L.Ed.2d 233 (1964). It is a power for the Board, not this court, to wield. *NLRB v. Seven-Up Bottling Co.*, 344 U.S. 344, 346, 73 S.Ct. 287, 288, 97 L.Ed. 377 (1953).

■ The Board's findings that Mr. Angle committed unfair labor practices and that Mr. Rodgers was illegally discharged are presumptive proof that Mr. Rodgers is owed some amount of backpay. *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 420 n.12, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975); *M.S.P. Industries, Inc. v. NLRB*, 568 F.2d 166, 179 (10th Cir. 1977). The Board calculated the amount of backpay due, and the burden then shifted to Mr. Angle to show that none was due or that the amount due had been improperly determined. *NLRB v. Fire Alert Co.*, 566 F.2d 696, 698 (10th Cir. 1977). The Board rejected Mr. Angle's defenses to its calculation. We must uphold the Board's conclusion if supported by substantial evidence on the record considered as a whole. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); *Crane Sheet Metal, Inc. v. NLRB*, 675 F.2d 256, 257 (10th Cir. 1982).

■ Mr. Angle's assertion that Mr. Rodgers is not due any backpay, because of improper conduct while employed by him, is without merit. In finding Mr. Angle guilty of civil contempt, the United States Court of Appeals for the District of Columbia Circuit concluded that Mr. Rodgers and another employee, who the master concluded had engaged in improper conduct,

should not be deprived of backpay which accrued prior to their misconduct. Since

it is difficult to define the precise point at which their acts in cumulative effect precluded reinstatement, and in order to avoid further delay in this protracted litigation, we think the Board should award backpay covering the period from their illegal discharges until their voluntary departures from the plant.

*Oil, Chemical & Atomic Workers International Union v. NLRB*, 547 F.2d 575, 593 n.19 (D.C.Cir.1976). Consistently with the court's suggestion, the Board tolled the backpay period as of May 22, 1973, the date Mr. Rodgers voluntarily quit his employment.[3] We think the Board was justified in following the court's suggestion. Mr. Rodgers' improper conduct during the period September 30, 1972 to May 22, 1973 should not bear upon his right to recover for periods of unlawful discharge prior to that time and, even if Mr. Rodgers engaged in improper conduct at earlier times, both the Board and the District of Columbia Circuit agree that such conduct (if it existed at all) was not sufficiently egregious to remove him from the protection of the Act. The record supports the Board's conclusion that, in these circumstances, it would be an injustice to deny Mr. Rodgers backpay altogether.

■■■ In determining the amount of backpay due Mr. Rodgers, the Board used a method combining formulae proposed by its General Counsel and Mr. Angle. This method took into account Mr. Rodgers' average hours of work prior to his unlawful termination and wage increases received by senior operators who remained in Mr. Angle's employ. Deductions from the amount calculated by this method were made for Mr. Rodgers' interim earnings, which were determined from social security reports, federal income tax returns, and additional evidence adduced at hearing. We think this was a reasonable approach to resolving a problem caused by Mr. Angle's wrongful

conduct. *See NLRB v. Columbia Tribune Publishing Co.*, 495 F.2d 1384 (8th Cir. 1974); *NLRB v. Izzi*, 395 F.2d 241 (1st Cir. 1968); *W. C. Nabors v. NLRB*, 323 F.2d 686 (5th Cir. 1963), *cert. denied*, 376 U.S. 911, 84 S.Ct. 666, 11 L.Ed.2d 609. A backpay award is only an approximation. The Board has considerable discretion in selecting a method reasonably designed to approximate the amount of pay a wrongfully discharged employee would have received absent his employer's wrongful conduct. *See NLRB v. Carpenter's Union, Local 180*, 433 F.2d 934 (9th Cir. 1970). Mr. Angle did not present sufficient credible evidence to support his assertions that Mr. Rodgers concealed amounts of his interim income by deliberately destroying records, failing to report income and deductions correctly on income tax returns, and maintaining poor and inaccurate records, nor has he shown why Mr. Rodgers' backpay award should be reduced because of his discharges by interim employers or his failure at certain business ventures. The record does not indicate that Mr. Rodgers wilfully concealed his income or failed to mitigate his losses properly by engaging in egregious misconduct.

Mr. Angle's remaining arguments for adjusting Mr. Rodgers' backpay award are, on the record, likewise meritless. The Board carefully considered and rejected his contentions that understatement of inventory income, improper sales tax deductions, understated and unreported sales, and certain other business practices necessitated adjustments in the award. Mr. Angle failed to present sufficient evidence to support these allegations of Mr. Rodgers' misconduct. Likewise, it was proper for the Board to exclude from the account of Mr. Rodgers' interim earnings his moonlighting income from a job held prior to discharge and the earnings of his spouse. The Board's conclusion that Mr. Angle failed to prove that certain bank deposits should be imputed as

---

3. The backpay period for Mr. Rodgers began on September 20, 1966, the date of his initial discharge, and ended on September 30, 1972, the last date he was reinstated pursuant to court order. He was not discharged during the period from September 30, 1972 until his voluntary departure on May 22, 1973.

income to Mr. Rodgers, rather than considered to be from the earnings of his spouse or some other source, also finds substantial support in the record. Finally, the Board was not required to accept computations of Mr. Angle's accountant in determining the amount of Mr. Rodgers' interim earnings. *See NLRB v. Carpenter's Union, Local 180*, 433 F.2d 934 (9th Cir. 1970).

We hold that the evidence in the record substantially supports the Board's determination of the amount of backpay due Mr. Rodgers. Certainly, the Board has met its duty to approximate reasonably the amount due. If Mr. Angle's arguments for reduction have any merit, evidence of it does not appear in the record. Accordingly, we deny his petition for relief and grant the Board's order for enforcement (No. 80–2057).

ORDERS FOR ENFORCEMENT GRANTED.