MURPHY, Circuit Judge,
dissenting in part and concurring in part.
The backpay awarded Edwin Kirk by the NLRB can only be described as an attempt by the NLRB to pound a square peg into a round hole. Although Kirk’s relationship with Velocity Express was that of employee/employer, it was unusual in that he provided his own delivery vehicle and absorbed all associated fuel and maintenance costs. As a consequence, the NLRB’s standard formula for calculating backpay awards is an improper fit. Because the NLRB ignored the economic realities of the relationship between Kirk and Velocity Express in calculating an appropriate backpay award, and in doing so awarded Kirk a substantial windfall, I respectfully dissent.
As noted by the majority, the NLRB’s power to order backpay is a “ ‘broad, discretionary one, subject to limited judicial review.’ ” Majority Op. at 1202 (quoting Fibreboard Paper Prods. Corp. v. NLRB, 379 U.S. 203, 216, 85 S.Ct. 398, 13 L.Ed.2d 233 (1964)). Furthermore, in determining backpay, the NLRB may use “close approximations” and “may adopt such formulas reasonably designed to produce such approximations.” NLRB v. Int’l Ass’n of Bridge, Structural & Reinforced Iron Wkrs., Local 378, 532 F.2d 1241, 1242 (9th Cir.1976) (quotations omitted); see also Angle v. NLRB, 683 F.2d 1296, 1302 (10th Cir.1982) (“A backpay award is only an approximation. The Board has considerable discretion in selecting a method reasonably designed to approximate the amount of pay a wrongfully discharged employee would have received absent his employer’s wrongful conduct.”). Accordingly, a backpay order is entitled to enforcement unless it is arbitrary or unreasonable in the particular circumstances of the case. Majority Op. 1202 (citing Int’l Ass’n of Bridge, Structural & Reinforced Iron Wkrs., 532 F.2d at 1242-43; Woodline Motor Freight, Inc. v. NLRB, 972 F.2d 222, 225 (8th Cir.1992)). Nevertheless, “where there is a dispute as to the proper backpay formula, the ALJ must choose the ‘most accurate’ formula, e.g. the formula that best captures the likely actual amount of wages lost due to illegal termination.” NLRB v. Pepsi Cola Bottling Co., 258 F.3d 305, 314 (4th Cir.2001).[1] *1206 Further, in making backpay calculations, the NLRB is “precluded from imposing punitive remedies,” and instead, is limited to making improperly discharged workers whole. Hoffman Plastic Compounds, Inc. v. NLRB, 535 U.S. 137, 152 n. 6, 122 S.Ct. 1275, 152 L.Ed.2d 271 (2002). Failing to tailor the remedy to the unfair labor practice the remedy is designed to redress is arbitrary and capricious. Sure-Tan, Inc. v. NLRB, 467 U.S. 883, 900, 104 S.Ct. 2803, 81 L.Ed.2d 732 (1984); Monfort, Inc. v. NLRB, 965 F.2d 1538, 1546-47 (10th Cir.1992).
The award of backpay in this case is so detached from the economic realities of the employment relationship between Velocity Express and Kirk that it is arbitrary and capricious. Although it is now settled that Kirk was actually an employee of Velocity Express, it cannot be contested that the parties contemplated a wage scheme that was akin to that of an independent contractor arrangement. Kirk was paid a flat fee for his service as a “same-day” delivery driver. From that fee, Kirk reimbursed Velocity Express for insurance and pager costs[2] and, most importantly for purposes of understanding the economic realities of this relationship, absorbed the other direct and necessary costs of his employment, such as gasoline and vehicle maintenance. Thus, as noted by the dissenting member of the Board, the real rate of gross pay Kirk received was substantially less than the fee provided in the flat rate.
Nevertheless, the Board chose to ignore the economic realities of the employment relationship between Kirk and Velocity Express and instead calculated Kirk’s backpay award by reference to its “standard formula.” Majority Op. at 1202. Under that formula, the Board refuses to “deduct from the gross backpay those expenses that employees would have incurred had they not been unlawfully discharged.” Supplemental D & O at 2 (citing Laborers Local 38 (Hancock-Northwest), 268 NLRB 167 (1983), enforced in relevant part, 748 F.2d 1001 (5th Cir.1984) (declining to deduct expenses for transportation, lodging and meals that the employees would have incurred had they been employed during the backpay period); Myerstown Hosiery Mills, 99 NLRB 630, 631 (1952)). The majority concludes the Board’s “decision was reasonable given the aim of liquidating the amounts the employees would have realized from their employer had they not been discharged wrongfully” and that “[ejxpenses incurred permitting an employee to work (transportation and child care) seem just as essential as an employee’s vehicle operating expenses.”
The problem with the Board’s approach, and the majority’s approval thereof, is that the vehicle costs at issue in this case are not remotely similar to transportation and child care costs at issue in the precedents identified by the NLRB. Both the cost of commuting to work and the cost of child care, although certainly essential to allowing an employee to work, see id., are neither deductible from an individual’s income taxes nor incurred in the performance of the work itself. The vehicle costs at issue in this case, on the other hand, are deducts ible business expenses, as demonstrated by Kirk’s deduction of these expenses on *1207 his 1998 tax return. Furthermore, the vehicle costs were incurred in the process of performing Kirk’s work (i.e., driving his vehicle to deliver freight), as opposed to simply being incidental expenses incurred by an individual in the ordinary course of life (i.e., child care and commuter costs). The Board’s application of its one-size-fits-all backpay formula to the unique circumstances of this case is an arbitrary and capricious failure to tailor the remedy to the unfair labor practice the remedy is designed to redress, Sure-Tan, 467 U.S. at 900, 104 S.Ct. 2803; Monfort, 965 F.2d at 1546-47, and results in an unwarranted and substantial windfall to Kirk.
According to the majority, “the dissent’s position is that Edwin was in fact an independent contractor (not an employee) and as such, the NLRB should deduct all of his expenses as an independent contractor from gross pay, just as they would be deducted on Schedule C.” Majority Op. at 1204. Contrary to the majority’s assertion, this dissent does not question the determination of the NLRB that Kirk was an employee of Velocity. That conclusion, however, does not entitle either the NLRB or this court to ignore the economic realities of the employment relationship in determining an appropriate backpay award. After all, employment relationships and their accompanying compensation structures take all kinds of forms and the NLRB is obligated to ensure that its award of backpay is tailored to remedy the unfair labor practice at issue and is limited to making the discharged employee whole. Hoffman Plastic Compounds, 535 U.S. at 152 n. 6, 122 S.Ct. 1275; Sure-Tan, 467 U.S. at 900, 104 S.Ct. 2803. Hence, the majority is simply incorrect in asserting that recognizing the economic realities of the employment relationship at issue in this case is somehow inconsistent with the conclusion that Kirk was an “employee” of NLRB for purposes of the NLRA.
Far more dangerous, however, is the majority’s categorical statement, apparently in dicta, that because .the NLRB determined Kirk was Velocity’s employee for purposes of the NLRA, and the D.C. Circuit’s enforcement of that order, the NLRB was obligated to adopt a gross receipts approach to calculating Kirk’s backpay award. Majority Op. at 1204. (“Given the D.C. Circuit’s decision to the contrary, we think that the ALJ and the NLRB majority had no choice but to reject this position as well as the conceptual difficulty it portends regarding the classifications of expenses.”). This statement is particularly odd in light of the majority’s extensive recitation of the wide discretion the Board has in calculating backpay awards and its conclusion that the backpay award to Kirk is supported by substantial evidence. Majority Op. at 1201-03. The majority cites no authority for its assertion that the NLRB is obligated, as a matter of law, to employ a gross receipts standard in every backpay proceeding and this dissent can find none. One need look no further than this case for an example of a situation where the gross receipts method, the method the majority asserts the NLRB is compelled to employ in every backpay calculation, results in a significant distortion of the remedy of backpay. The majority is simply wrong to assert that the NLRB is obligated to employ the gross receipts method in calculating Kirk’s backpay award, let alone obligated to employ that method in all backpay proceedings.
For those reasons set out above, I would deny enforcement of the Board’s order as to Kirk’s backpay award. Because the majority concludes otherwise, I respectfully dissent. I concur in the balance of the majority opinion.

. As noted by the majority, this court stated in Angle v. NLRB, 683 F.2d 1296, 1302 (10th Cir.1982) that "[a] backpay award is only an approximation” and that the NLRB “has considerable discretion in selecting a method reasonably designed to approximate the amount of pay a wrongfully discharged employee would have received absent his employer’s wrongful conduct.” Majority Op. at 1203. Since our decision in Angle, however, the NLRB has cabined its own discretion, ruling *1206 that when there is a dispute as to the proper backpay formula, the ALJ must choose the " ‘most accurate' " formula. Woodline Motor Freight, Inc., 305 NLRB 6 n. 4 (1991), enforced, 972 F.2d 222, 226 (8th Cir.1992); Laborers Local 135 (Bechtel Power Corp.), 301 NLRB 1066, 1073 (1991). Thus, in analyzing whether a backpay award is reasoned and reasonable, or is instead arbitrary and capricious, it is necessary to keep in mind the requirement that the ALJ utilize the most accurate formula.

. These costs were approximated by the ALJ and deducted from the flat fee Kirk would have otherwise received in calculating Kirk’s backpay award.