NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

TAMA MEAT PACKING CORP.,
Respondent.

No. 80–1005.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 9, 1980.

Decided Nov. 4, 1980.

See also, 8 Cir., 575 F.2d 661.

William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., Washington, D. C., for petitioner; Robert G. Sewell, Hessie L. Chandler, Linda J. Dreeben, N. L. R. B., Washington, D. C., of counsel.

Elarbee, Clark & Paul, Atlanta, Ga., for respondent.

Before LAY, Chief Judge, GIBSON, Senior Circuit Judge, and HEANEY, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

The National Labor Relations Board (Board) petitions this court for enforcement of its supplemental order issued against Tama Meat Packing Corp. The Board seeks to enforce its decision requiring backpay to a former Tama employee who was improperly discharged because of his union activities. Tama contests the backpay award on the grounds that the employee did not mitigate his loss of earnings. Tama also objects to the Board's finding with regard to the proper job position to be used to calculate the backpay award. We enforce, in part, the Board's order, modifying it with respect to the proper job position to be used in the calculation of backpay.

On June 10, 1977, the Board issued a decision and order declaring that Tama had discriminatorily suspended and then dis-

charged Richard Thomas in July 1976 because of his union activities. The Board directed Tama to take certain affirmative action to remedy the unfair labor practices contained therein, including the reinstatement of Thomas and payment to him of backpay. *Tama Meat Packing Corp.*, 230 N.L.R.B. 116, 129 (1977). Thereafter, on July 28, 1978, this court issued its decision enforcing, with a minor modification, the backpay provision of the Board's order. *Tama Meat Packing Corp. v. NLRB*, 575 F.2d 661 (8th Cir. 1978), *cert. denied*, 439 U.S. 1069, 99 S.Ct. 837, 59 L.Ed.2d 34 (1979).

Tama reinstated Thomas on August 8, 1978. Since the parties were unable to agree on the amount of backpay due to Thomas under the terms of the Board order as modified, the Regional Director issued a backpay specification and notice of hearing which was duly answered by Tama. Thereafter, a hearing was held before an administrative law judge (ALJ) to resolve the issues raised by Tama's answer and to establish the amount of backpay due.

On June 15, 1979, the ALJ issued a supplemental decision finding that Thomas had made a "diligent and reasonable search for work comparable to that which he previously performed at Respondent's plant," and that Thomas had accepted "substantially equivalent interim employment, albeit at a lower rate of pay and at a workplace much further from his home." However, the ALJ agreed with Tama's argument that backpay should be computed on the basis of the flanker rate of pay, except for the first three weeks of the backpay period, rather than the higher backsaw operator rate of pay. The judge recommended that Thomas be awarded backpay in the amount of $15,-691.00 with interest, less withholding taxes. Thereafter, both Tama and the Union filed exceptions to this supplemental decision.

On September 14, 1979, the Board issued its supplemental decision and order affirming the ALJ's findings and conclusions without comment on the substantive issues raised in Tama's exceptions. The Board, however, did not agree with the ALJ's backpay computations and, instead, modi-

fied the recommended order by recomputing Thomas's backpay at the backsaw operator's rate of pay for the entire backpay period. Accordingly, the Board ordered Tama to make Thomas whole by payment to him in the amount of $16,551.00 with interest, less withholding taxes. *Tama Meat Packing Corp.*, 244 N.L.R.B. ——, [1979–80] NLRB Dec. (CCH) ¶ 16,269 (1979).

Richard Thomas was placed on suspension by Tama on Monday, July 19, 1976, and began looking for interim employment the next day, Tuesday, July 20. He drove the fifty miles one way from his home in Toledo, Iowa, to Cedar Rapids, Iowa, where he visited the Iowa Job Service, a state employment agency. On the following day, Wednesday, July 21, he drove the fifty miles one way to Waterloo, Iowa, where he visited another office of the Iowa Job Service. That same day, upon his return from Waterloo, Thomas drove to Pella, Iowa, approximately sixty–two miles south of his Toledo home, to seek work at Pella Packing, Inc. and he was hired effective Thursday, July 22.

Thomas worked as a cattle butcher at Pella from July 22, 1976, until his reinstatement by Tama in August 1978, except for a one–month period in March and April 1978 when he quit his job at Pella and moved his family to California to pursue a business opportunity with his mother–in–law. The venture failed and Thomas returned to work at Pella.

At the time of his suspension and discharge in July 1976, Thomas had approximately fifteen years' experience as a cattle butcher and was earning $5.75 an hour butchering cattle at the company's Tama plant. The job at Pella paid $4.00 an hour initially, but Thomas progressed to $4.75 an hour and was earning that amount when he left to return to Tama in August 1978. In addition, the job at Pella required Thomas to drive from his home in Toledo, Iowa, over 120 miles round trip every day. In April 1978, he moved to Belle Plaine, Iowa, which lengthened the trip to over 150 miles a day for the last four months of his employment at Pella. Thomas testified that

the daily trip to Pella and back was "tiresome" and he looked into the possibility of buying or renting a house closer to Pella, Iowa. However, he abandoned this idea because of the costs involved and because he believed that he would eventually be reinstated to his old job at Tama's plant in Tama, Iowa. Thomas was reinstated on August 8, 1978.

*Mitigation of Lost Earnings*

■ Tama acknowledges that once the Board's General Counsel has carried his burden of determining the gross amount of backpay due the victim of the discrimination, "the burden is upon the employer to establish facts which would negative the existence of liability to a given employee or which would mitigate that liability." *NLRB v. Brown & Root, Inc.*, 311 F.2d 447, 454 (8th Cir. 1963). Tama argues, however, that Thomas failed to make a reasonable effort to find interim employment which was substantially equivalent to the position from which he was discharged and suitable to him, given his background and experience. *See NLRB v. Midwest Hanger Co.*, 550 F.2d 1101, 1105–06 (8th Cir.), *cert. denied*, 434 U.S. 830, 98 S.Ct. 112, 54 L.Ed.2d 90 (1977). *See also Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 197–98, 61 S.Ct. 845, 853–54, 85 L.Ed. 1271 (1941); *NLRB v. Arduini Manufacturing Corp.*, 394 F.2d 420, 423 (1st Cir. 1968); *NLRB v. Miami Coca-Cola Bottling Co.*, 360 F.2d 569, 575 (5th Cir. 1966).

Tama maintains that Thomas should have applied for employment in Marshalltown, Iowa, where a Swift hog packing plant was located. Marshalltown is nineteen miles from Thomas's home. In addition, the Swift plant paid butchers more than Thomas received at Tama or Pella. Tama argues that Thomas, by not submitting an application for employment at the Swift plant, did not make an "honest good faith effort" to mitigate his damages in this case. *See Oil, Chemical and Atomic Workers International Union, AFL–CIO v. NLRB*, 547 F.2d 598, 603 (D.C.Cir.1976), *cert. denied*, 429 U.S. 1078, 97 S.Ct. 823, 50 L.Ed.2d 798 (1977). Tama suggests that the reason Thomas did

not apply at the Swift plant was his dislike for hog butchering as opposed to cattle butchering. Tama also argues that there is no evidentiary basis for the assertion by the Board, in its brief, that the work at Swift would have been more onerous than that Thomas performed at Tama or Pella.

We need not determine whether hog butchering is "substantially more onerous" than cattle butchering, *see NLRB v. Madison Courier, Inc.*, 472 F.2d 1307, 1320–21 (D.C.Cir.1972), since we find substantial evidence in the record as a whole to support the ALJ's finding that "Thomas diligently sought equivalent interim employment." *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–88, 71 S.Ct. 456, 463–65, 95 L.Ed. 456 (1951).

■ The record reveals that Thomas engaged in substantial search for employment, even *before* he was unlawfully terminated by Tama. Thomas certainly was no laggard in this regard. During his two–day suspension, before being officially terminated, Thomas sought the aid of two state employment agencies to obtain a new job. Through these and other efforts Thomas was able to obtain a new job beginning the same day he was terminated from Tama. Once he had obtained this position, Thomas should not be required to resign and begin working at any packing plant which may offer a higher salary. In fact, if this were the relevant standard for mitigation, Thomas should never have been employed at Tama to begin with, since Swift paid higher wages than Tama. Obviously, working conditions, such as the type of butchering and length of employment, are relevant criteria to be considered in determining whether a proper mitigation of damage has been made. Thomas, in the context of this case, after expeditiously finding employment with Pella, had no duty to apply for another type of position with Swift.

*Proper Computation of Backpay*

When Thomas was reinstated on August 8, 1978, he was entitled to be employed at the higher paying position of backsaw operator, rather than his previous position of

flanker. *See Tama Meat Packing Corp. v. NLRB, supra,* 575 F.2d at 663. On August 29, 1978, Thomas voluntarily disqualified himself from the backsaw position and asked to be returned to his old job of flanker. Tama argues that Thomas's backpay should be computed on the basis of the flanker rate of pay, except for the first three weeks, rather than the backsaw operator rate as determined by the Board.

The ALJ agreed with Tama on this issue, but the Board modified the ALJ's decision and computed the backpay by utilizing the higher backsaw rate. The ALJ had reasoned that, since Thomas disqualified himself three weeks after reinstatement, · it would be logical to assume that Thomas also would have voluntarily disqualified himself had the position been properly offered to him in 1976. Therefore, Thomas would be unjustly enriched if the backsaw rate were used. The Board rejected this reasoning, finding:

> The record does not reflect why Thomas refused the backsaw operator position on a permanent basis following his reinstatement, and we shall not speculate as to why he took such action or as to whether he would have refused the backsaw operator position on a permanent basis had it been offered to him in July 1976. Inasmuch as Respondent's unlawful discrimination against Thomas renders it impossible to ascertain what Thomas would have done in July 1976 regarding the backsaw operator position, the uncertainty should be resolved against Respondent.

*Tama Meat Packing Corp.,* 244 N.L.R.B. ——, [1979–80] NLRB Dec. (CCH) ¶ 16,269 (1979).

We disagree with the Board's conclusion. While the issue appears to be one of first impression, we are guided by the purpose behind the backpay award, which is to make whole the employee who has been unlawfully discriminated against. *See Phelps Dodge Corp. v. NLRB, supra,* 313 U.S. at 197, 61 S.Ct. at 853. "The amount which serves as the basis for the backpay award is the amount which the employee discriminated against would have earned

but for the discriminatory act." *NLRB v. Columbia Tribune Publishing Co.,* 495 F.2d 1384, 1392 (8th Cir. 1974) (emphasis added). Thomas's decision to withdraw voluntarily from the backsaw position constituted an independent intervening cause which was unrelated to the discriminatory acts of Tama. The fact that Thomas withdrew is *prima facie* evidence that he would have done so in the event the position had been originally offered to him in 1976. In the absence of any rebuttal evidence from Thomas, no substantial evidence exists to support the contention that Thomas would have accepted and remained in the backsaw position, had it been offered in 1976. Any other conclusion would result in Thomas's being compensated beyond the foreseeable wage loss that he suffered as a result of Tama's discrimination.

Enforced in part; modified in part.

LAY, Chief Judge, concurring and dissenting.

I concur in that portion of the opinion holding that Thomas met his obligation to mitigate his lost wages. I cannot agree, however, that backpay should be paid at the rate for a flanker rather than at the higher rate for a backsaw operator. The record shows that in July of 1976 Tama discriminated against Thomas by denying him the opportunity to work at the higher rate; the backpay award should make Thomas whole for this lost opportunity.

When Thomas returned to work at Tama in 1978, he worked as a backsaw operator for three weeks. Then, for unspecified reasons, he returned to his job as a flanker. It is completely speculative to assert that a decision in 1978 not to continue in a job demonstrates that the employee would have made the same decision in 1976. The employer has the burden of establishing mitigation as to backpay, and in the present case Tama has advanced only a speculative theory in an attempt to defeat Thomas's claim. I would defer to the Board's expertise in fashioning the appropriate remedy.