NATIONAL LABOR RELATIONS
BOARD, Appellant,

v.

HOPCROFT ART & STAINED GLASS
WORKS, INC., Appellee.

No. 80–1417.

United States Court of Appeals,
Eighth Circuit.

Submitted June 14, 1982.

Decided Nov. 5, 1982.

Edwin C. Tyson, Shockley, Reid & Koger, Kansas City, Mo., for appellee.

* The Honorable Joseph E. Stevens, Jr., United States District Judge, Eastern and Western Dis-

William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Kenneth B. Hipp, Deputy Asst. Gen. Counsel, Daniel R. Pollitt, Atty., N.L.R.B., Washington, D.C., for appellant.

Before ROSS, Circuit Judge, HENLEY, Senior Circuit Judge, and STEVENS,* District Judge.

STEVENS, District Judge.

The NLRB petitions this court for enforcement of its supplemental order issued against Hopcroft Art and Stained Glass Works, Inc. The Board seeks to enforce its decision requiring the payment of $9,438.34 backpay and interest to a former Hopcroft employee who was improperly discharged because of union activities, according to an earlier decision of an Administrative Law Judge which was adopted by the NLRB and enforced by this court. Hopcroft contests the backpay award on the grounds that the employee did not mitigate his loss of earnings. We enforce the board's order in part, modifying it with respect to the amount of backpay calculated.

On July 25, 1979, Administrative Law Judge (ALJ) Russell L. Stevens issued a decision in the underlying unfair labor practice proceeding, finding that Hopcroft had discriminatorily discharged Gregory Dean Stratton for union activities. In the absence of exceptions, the Board adopted the ALJ's recommended order on August 30, 1979, and this court entered its order enforcing the Board's order on July 8, 1980. The order of the ALJ adopted by the Board and enforced here directed Hopcroft to take certain steps to remedy the unfair labor practice, including the reinstatement of discriminatee Stratton and the payment to him of backpay in an amount not specified in the order but to be determined by the parties.

The parties were unable to agree on the amount of backpay due Stratton and the regional director issued a backpay specifica-

tricts of Missouri, sitting by designation.

tion and notice of hearing which was answered by Hopcroft. A hearing to determine the amount of backpay due was held before ALJ Clifford Anderson and his supplemental decision was issued August 7, 1981. The decision recommended that Stratton be awarded backpay of $9,438.34 with interest, less withholding taxes. On September 30, 1981, the Board issued its supplemental decision and order affirming the ALJ's findings and recommendations.

Stratton was fired by Hopcroft on December 14, 1978. Pursuant to the court order enforcing the board's decision regarding the discriminatory nature of Stratton's discharge, Hopcroft issued a reinstatement offer on October 24, 1980; thus, the backpay period upon which the ALJ's calculations were based consists of nine calendar quarters—December 12, 1978, through October 24, 1980.

Hopcroft's position is that backpay should be denied partially or totally because Stratton willfully incurred a loss of earnings. The concept known as "willful loss of earnings" was developed in *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 61 S.Ct. 845, 85 L.Ed. 1271 (1941) and has evolved in subsequent cases. "It is accepted by the Board and reviewing courts that a discriminatee is not entitled to backpay to the extent that he fails to remain in the labor market, refuses to accept substantially equivalent employment, fails diligently to search for alternative work, or voluntarily quits alternative employment without good reason." *NLRB v. Mastro Plastics Corp.*, 354 F.2d 170, 174 n. 3 (2d Cir. 1965). Hopcroft's challenge to the board order contends that Stratton is not entitled to backpay for each and all of the reasons listed in *Mastro Plastics*.

During the backpay period, Stratton worked in five different jobs and was unemployed thirty percent of the time. During the periods of unemployment, Stratton testified that he pursued employment in a variety of methods. With regard to the five jobs which he did hold, Stratton indicated that he was laid off of two jobs, quit two jobs, and was employed at the fifth at the time of the reinstatement offer. The

record of the hearing also contains testimony regarding certain potential employment which was brought to Stratton's attention and the reasons which Stratton gave for not pursuing those jobs.

This court is required to search the record as a whole to determine whether there is substantial evidence to support the ALJ's finding. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). Hopcroft recognizes that once the board has sustained its burden of demonstrating the gross amount of backpay due the discriminatee (*NLRB v. Brown and Root, Inc.*, 311 F.2d 447, 454 (8th Cir. 1963)) the burden shifts to the employer " 'to establish facts which would negative the existence of liability to a given employee . . .' " *NLRB v. Tama Meat Packing Corp.*, 634 F.2d 1071, 1073 (8th Cir. 1980) (quoting *Brown and Root, Inc.*).

The first basis claimed by Hopcroft for denying backpay is that Stratton voluntarily quit alternate employment. Stratton's first job after his discharge from Hopcroft began February 16, 1979, at the Alton Box Company. At the hearing, Stratton indicated that he experienced an injury to his foot while working at Alton and that his doctor had "suggested that he had torn some ligaments" so he requested light duty. He was placed on light duty for "the first couple of weeks" but found that upon his return to his regular job the condition of his foot prevented him from doing his work so he resigned voluntarily on March 28, 1979. Stratton then testified about his job search from March 28, 1979, to April 8, 1979, when he took employment at Queen City Siding. The transcript indicates that Stratton was paid $3.75 an hour at Queen City and was employed there until May 18, 1979, when he quit voluntarily. He first explained on direct examination that he quit Queen City Siding because of "personal problems" with Dennis Burke, a neighbor and long time acquaintance who managed the company (tr. 69). During cross by counsel for the board, he testified that Burke was "trying to require a performance out of me to work" because Burke tried to complete jobs ahead of schedule to obtain a bonus and sought to finish siding jobs quickly.

The ALJ found that these two occasions when Stratton voluntarily left his employment did not rise to the level of conduct sufficient to toll backpay. As to Stratton's resignation from Alton Box, that finding conforms to the reasoning in *My Store, Inc.,* 181 NLRB 321 (1970) in which it was found that a discriminatee who lost an interim job because he was physically incapable of performance did not incur any willful loss of employment. That same finding cannot apply to Stratton's voluntary resignation from Queen City because there is not substantial evidence on the record as a whole to support the ALJ's conclusion that this unilateral act of Stratton, unrelated to the discrimination, should not impact the backpay award. As the court stated in *NLRB v. Aycock,* 377 F.2d 81, 85 (5th Cir. 1967), "[a] discriminatee should not be able to leave such interim employment for any reason which comes into his head and be assured, as the board would assure him, that he will not thereby incur any financial loss."

The effect of an unjustified quit was discussed in *Gary Aircraft Corp.,* 211 NLRB 555 (1974), which explained that the amount the employee would have earned had he not quit is to be offset for the remainder of the backpay period. *Gary Aircraft* sets forth the procedure of the board as it was stated in *Knickerbocker Plastics Company, Inc.,* 132 NLRB 1209, 1215:

> We further find that, as a result of such quitting, each of these claimants shall be deemed to have earned for the remainder of the period for which each is awarded backpay the hourly wage being earned at the time such quitting occurred. Therefore, an offset computed on the appropriate rate per hour will be deducted as interim earnings from the gross backpay of each of these claimants. This offset shall be made applicable from the date of the unjustified quitting throughout the remainder of the backpay period for each particular claimant. In this connection, where the claimant has secured other employment during the time the offset is applicable, and if, on a quarterly basis, she earned a greater amount than the offset, the offset will not be applied, but the actual interim earnings will be deducted from gross backpay. If she earned less than the offset at employment secured subsequent to the quitting, also on a quarterly basis, the amount of the offset will be applied.

Applying the *Gary Aircraft* procedure to the backpay calculation as set forth in the supplemental decision, the computation of backpay is as indicated in the appendix attached to this opinion.

As to Hopcroft's arguments that 1) Stratton refused to accept alternate work, 2) Stratton failed to diligently search for alternate employment and 3) Stratton failed to remain in the labor market, this court finds that there is substantial evidence on the record as a whole to support the ALJ's finding that Stratton's backpay should not be reduced for any of those reasons. Therefore, we enforce the Board's backpay award as modified by the amount of money which Stratton would have earned had he not unjustifiably quit employment with Queen City Siding.

Enforced as modified.

## APPENDIX

| Calendar Quarter | Gross Backpay | Modified Interim Earnings | Net Backpay |
|---|---|---|---|
| 1978–4 | $ 320.00 | 0 | $ 320.00 |
| 1979–1 | $2,194.40 | $ 987.20 | $1,207.20 |
| 1979–2 | $2,308.80 | $ 900.00 | $1,408.80 |
| 1979–3 | $2,308.80 | $1,800.00 | $ 508.80 |
| 1979–4 | $2,537.60 | $1,800.00 | $ 737.60 |
| 1980–1 | $2,537.60 | $1,800.00 | $ 737.60 |

| Calendar Quarter | Gross Backpay | Modified Interim Earnings | Net Backpay |
|---|---|---|---|
| 1980–2 | $3,073.20 | $1,800.00 | $1,273.20 |
| 1980–3 | $3,073.20 | $2,149.44 | $ 923.76 |
| 1980–4 | $ 709.20 | $ 899.40 | 0 |
| TOTAL NET BACKPAY | | | $7,116.96 |