**WOODLINE MOTOR FREIGHT, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**WOODLINE MOTOR FREIGHT, INC., Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Petitioner.**

Nos. 91–3363, 91–3531.

United States Court of Appeals, Eighth Circuit.

Submitted April 14, 1992.

Decided Aug. 6, 1992.

Bob Lawson, Jr., Little Rock, Ark., argued, for appellant.

Frederick C. Havard, Washington, D.C., argued (John D. Burgoyne, on the brief), for appellee.

Before JOHN R. GIBSON, Circuit Judge, PECK,* Senior Circuit Judge, and BEAM, Circuit Judge.

BEAM, Circuit Judge.

Woodline Motor Freight, Inc. appeals from an order of the National Labor Relations Board and challenges the Board's formula for calculating the amount of backpay Woodline owed to its unlawfully discharged employees. Woodline argues that the Board should have used a formula based on the earnings of employees before their discharge rather than one based on the earnings of employees who were representative of the discharged employees during the period for which backpay was ordered. Woodline also argues that the Board erred by not tolling the backpay period for three of its former employees. We affirm.

## I. BACKGROUND

In 1986, the National Labor Relations Board held that Woodline had violated the National Labor Relations Act by attempting to defeat a union organization drive. The Board found that Woodline had "committed a series of unfair labor practices," including discharging employees in violation of the Act. *See Woodline Motor Freight v. NLRB*, 843 F.2d 285, 287 (8th Cir.1988). With some exceptions, we found that there was "substantial evidence in the record as a whole to support the Board's findings," and granted the Board's application for enforcement of its remedial order reinstating the employees and awarding them backpay. *Id.* Pursuant to that remedial order, the Board's regional director issued a compliance specification devising

---

* The HONORABLE JOHN W. PECK, Senior Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation.

and applying a formula to determine the amount of backpay owed to employees who were wrongfully discharged.

In the compliance specification, which was later substantially adopted by the administrative law judge, the regional director used what is known as the "representative employee formula" to determine the amount of backpay due to each unlawfully discharged employee. Under the representative employee formula, the precise amount of backpay is determined by the amount of wages earned, during the period of time for which wages are owed, by employees who are representative of the discharged employees (i.e., employees with similar work, hours, etc). The compliance officer chose this formula rather than one which would calculate the amount of backpay based on the amount each discharged employee was actually earning before discharge—sometimes called a "pre-unfair-labor-practice formula"—because (1) the length of the backpay period for most discharged employees exceeded one year (for some employees it covered seven or eight years) and (2) during the backpay period the trucking industry was being de-regulated and the regional director believed that the employees' earnings might have been affected by the changes in the industry.[1]

The discharged employees (and their representative employees) were divided into two categories, corresponding with the two types of work they had performed. The first category was for nine employees who had worked as "line haul drivers." Line haul drivers drove delivery trucks between cities. All but one of the line haul drivers worked out of Woodline's Russellville, Arkansas, terminal. The representative employees who were used to calculate the backpay of the discharged employees in this category also, during the backpay period, worked at the Russellville plant. The second category was for the remaining eight employees who had worked as "city drivers" out of Woodline's Springdale, Arkansas, terminal. City drivers drove local delivery trucks. The employment records for the Springdale employees were unavailable, so the regional director, on the advice of Woodline, chose city drivers at Woodline's Harrison, Arkansas, terminal as representative employees.

The compliance specification and its calculation of backpay was adopted by the ALJ, with some amendments, and eventually adopted by the Board. Woodline now appeals from the order of the Board, claiming that the Board erred in affirming the ALJ's decision that the representative employee formula was the most accurate method of determining the amount of backpay and that the Board erred in affirming the ALJ's decision to not toll the backpay due to three discharged employees who had refused either reinstatement or an equivalent position with another company.

## II. DISCUSSION

At the outset, we should state a few principles guiding our decision. In *NLRB v. Brown & Root*, 311 F.2d 447 (8th Cir. 1963), we explained

> that the purpose of a back pay award is to make whole the employee who has been discriminated against as the result of an unfair labor practice. The employee is entitled to receive what he would have earned normally during the period of the discrimination against him, less what he actually earned in other employment during that period. Of course, an employee must use reasonable diligence to find employment during the period of discrimination. He is not entitled to back pay for periods during which he voluntarily remained in idleness.

*Id.* at 452.

As a practical matter, the Board's General Counsel has the initial burden to show "the gross amount of backpay due the victim of the discrimination." *NLRB v. Tama Meat Packing*, 634 F.2d 1071, 1073 (8th Cir.1980). After a gross amount is demonstrated, " 'the burden is upon the employer

---

1. The backpay owed to two employees was determined by their actual wages prior to being discharged. In one case, this was because no representative employee could be found; in the other instance, the backpay time period lasted just several weeks. Woodline does not challenge the computation of backpay for either of these employees.

to establish facts which would negative the existence of liability to a given employee or which would mitigate that liability.' " *Id.* (quoting *Brown & Root,* 311 F.2d at 454). In many instances, it is impossible to precisely determine the amount of backpay that should be awarded. "In such circumstances the Board may use as close approximations as possible, and may adopt formulas reasonably designed to produce such approximations." *Brown & Root,* 311 F.2d at 452.

The remedial power of the Board to award backpay "is 'a broad discretionary one, subject to limited judicial review.' " *NLRB v. Rutter–Rex,* 396 U.S. 258, 262–63, 90 S.Ct. 417, 419, 24 L.Ed.2d 405 (1969) (quoting *Fibreboard Corp. v. NLRB,* 379 U.S. 203, 216, 85 S.Ct. 398, 405, 13 L.Ed.2d 233 (1964)). As the Supreme Court stated in *Rutter–Rex,* the Board's "power to order back pay 'is for the Board to wield, not for the courts.' " *Id.* 396 U.S. at 263, 90 S.Ct. at 420 (quoting *NLRB v. Seven–Up Bottling Co.,* 344 U.S. 344, 346, 73 S.Ct. 287, 288, 97 L.Ed. 377 (1953)). Once a remedial order awarding backpay is issued by the Board, our inquiry with respect to the formula used " 'may ordinarily go no further than to be satisfied that the method selected cannot be declared to be arbitrary or unreasonable in the circumstances involved.' " *Brown & Root,* 311 F.2d at 452 (quoting *NLRB v. Ozark Hardwood Co.,* 282 F.2d 1, 7 (8th Cir.1960)). "Finally, ... the Board's conclusion as to whether an employer's asserted defenses against liability have been successfully established will be overturned on appeal only if the record, considered in its entirety, does not disclose substantial evidence to support the Board's findings." *NLRB v. Westin Hotel,* 758 F.2d 1126, 1130 (6th Cir.1985).

A. Representative Employee Formula

■ Woodline claims that the Board erred in adopting the ALJ's use of a representative employee formula to determine the amount of backpay it owed. Woodline

argues that the ALJ's reasons for using the representative employee formula are faulty and that a pre-unfair-labor-practice formula would have been more accurate. We hold that the representative employee formula was reasonable and non-arbitrary.

The compliance officer testified before the ALJ that he follows the Board's *Casehandling Manual* when calculating backpay by generally only applying a pre-unfair-labor-practice formula "when the backpay periods are for 1 year or less." Appendix of Appellant's Brief at 2 (Board's Order). Pre-unfair-labor-practice formulas are not used for long time periods because they are "unreliable given the uncertainty in predicting earnings so far into the future." *Id.* at 6 (ALJ's Supplemental Decision). The ALJ made the error, however, of stating in its Supplemental Decision that the backpay period for "most employees" in this case "extend[ed] from 1980 to 1988." *Id.* at 6.

The Board noted this error in its order adopting the recommendation of the ALJ, but the Board concluded that the ALJ's error did not affect its decision because the ALJ "also relied on the compliance officer's testimony that pre-unfair-labor-practice formulas are generally applied only when the backpay periods are for 1 year or less" and "[h]ere, 12 discriminatees had backpay periods extending for 2 years or more." *Id.* at 2 n. 4 (Board's Order).[2] The Board noted further that the ALJ "found that the compliance officer properly took into consideration that deregulation occurred at about the time of the unfair labor practices, rendering the use of a pre-unfair-labor-practice formula unreliable for most of the discriminatees." *Id.*

Woodline now argues that insufficient evidence was presented to the ALJ with respect to the effects of deregulation on Woodline's business and that the factual error by the ALJ on the length of the backpay periods was the "primary" basis for the ALJ's decision that the representa-

---

**2.** We tend to doubt, just as an aside, whether this was in fact a fact-finding error by the ALJ. We believe it may have been simply a misstatement, for the rest of the ALJ's order and compu-

tations of backpay, totalling thirty-four pages including appendices, gives every indication that the ALJ was well aware of the length of each discharged employee's backpay period.

tive employee formula was the most accurate—thus, according to Woodline, the ALJ's choice of formula must also be erroneous.[3] We disagree. Woodline is correct that the ALJ did not hear testimony about the precise effects of deregulation on Woodline's business, but the ALJ did hear testimony that the effects, if any, were uncertain. These possible changes in the industry, combined with the lengthy time periods for backpay, convince us that the Board's reasoning, as quoted above, and its conclusion that the representative employee formula was the most accurate were entirely reasonable and non-arbitrary.

### B. Tolling Backpay of Certain Employees

Woodline also argues that the Board erred in affirming the ALJ's decision not to toll the backpay due to three discharged employees who were either offered reinstatement at Woodline or substantially equivalent positions with another company. We disagree.

■ One employee, David Ingle, worked as a city driver for Woodline, delivering freight locally from the company's Springdale, Arkansas, terminal. He was unlawfully discharged by Woodline in February 1981. Woodline contends that Ingle's backpay should have been tolled by the ALJ because Woodline had offered Ingle another employment position in late 1983. Ingle, however, was not offered a position like the one from which he was discharged. Woodline told Ingle that in his new position he would drive a tractor-trailer rather than a bob-truck, which he drove in his former position; that he, Ingle, would have to pass a driver's examination in order to qualify to drive the tractor-trailer; that he would be based in Siloam Springs, Arkansas, which is "about 25 miles" from Springdale; and, that instead of making local deliveries, "he would make road runs to Fort Smith, Springdale, and Fayetteville, as well as road runs to other places." *Id.* at 11. The ALJ concluded that this position was "an entirely different position, at a different location[, and] on a different compensation basis from his former position." *Id.* at 11. The Board accepted the ALJ's conclusion and we believe there is substantial evidence to support the Board's decision.

■ Another unlawfully discharged employee whose backpay is in dispute is Walter Bolin. Bolin, like Ingle, had worked as a city driver at the Springdale terminal. Woodline, again like Ingle, offered Bolin reemployment in late 1983. Woodline told Bolin when it offered him the position that "he might be picking up freight in Springdale or Fayetteville and run to Siloam Springs in the capacity of a tractor-trailer and bob-truck driver." *Id.* at 8. (Bolin, too, would have had to pass a driving examination in order to drive a tractor-trailer.) The ALJ concluded that Woodline's "offer was ambiguously uncertain in terms, that it fairly required a test passage and therefore was not unconditional in nature, and further required terminal[-]to[-]terminal runs unlike the only local deliveries performed by Bolin according to his undenied testimony (and insofar as the record shows) in his former position." *Id.* The Board adopted the conclusion of the ALJ and, although the evidence is not as compelling as in Ingle's case, we believe the evidence is substantial enough to affirm the Board's decision.[4]

---

**3.** Woodline also states that there was no "evidence in the backpay hearing to show whether the hours or miles of the 'representative employees' during the applicable quarters were substantially similar" to the discharged employees. Brief for Appellant at 15. This is obviously not true and hardly deserves more than this mention. The backpay computations were made using representative employees (selected with the help of Woodline) who either worked at the same terminal as the discharged employees or at a similar terminal (which was also chosen with the help of Woodline) during the time period for which backpay was owed.

**4.** Woodline argues that because it had closed its Springdale terminal by the time it offered reinstatement to Ingle and Bolin, the terms of the offers made were sufficient to toll the backpay. As the Board points out, however, Woodline had stipulated at the ALJ's hearing that its vice-president, Douthit, "had the privilege of hiring local pick-up and delivery drivers to be stationed in Springdale" at the time the offers of reinstatement were made "but never exercised that privilege." Joint Appendix at 344. The different location, moreover, was not the only basis for the ALJ and Board's conclusion that

The final employee in dispute is Paul Rickman. Rickman had been employed as a line haul driver at the Russellville terminal before he was unlawfully discharged. Because of his seniority at Woodline, Rickman only drove between terminals on "turnaround" trips, that is, trips which did not require an overnight stay. After being fired by Woodline, Rickman accepted part-time employment as a delivery driver with the Atkins Pickle Company. A few weeks later, Rickman was offered full-time employment with Atkins, but he declined the job. Woodline contends that his backpay should be tolled from that point on. The ALJ, however, found that the full-time job offered by Atkins "differed substantially from Rickman's earlier position because there Rickman drove turnarounds for Woodline to Memphis, Little Rock and Fort Smith with no unloading duties and, due to his seniority[,] Rickman regularly chose to drive runs not requiring overnight layovers so he could return home daily." *Id.* at 9. The Atkins position, on the other hand, would have required Rickman to drive "to Florida and California" and it would have required him "to pedal and unload freight." *Id.* An unlawfully discharged employee is "obligated to search for substantially equivalent" employment. *Arlington Hotel Co. v. NLRB*, 876 F.2d 678, 680 (8th Cir. 1989). But the "employee is not required to seek or retain a job more onerous than the job from which he or she was discharged." *Kawasaki Motors v. NLRB*, 850 F.2d 524, 528 (9th Cir.1988). The Board accepted the findings of the ALJ with respect to Bolin and, again, after reviewing the record, we hold that under the applicable law there is substantial evidence to support the Board's decision.

## III. CONCLUSION

For the reasons stated above, the order of the National Labor Relations Board is affirmed.

Woodline's offers of reinstatement were not specific, unequivocal, and unconditional.