984 F.2d 479
 142 L.R.R.M. (BNA) 2455, 299 U.S.App.D.C. 349,
124 Lab.Cas. P 10,523
 Elmer NORDSTROM, Managing Partner, et al., d/b/a Seattle
Seahawks, and SSI, Incorporated, d/b/a Seattle
Seahawks, a Successor in Interest, Petitioners
v.
NATIONAL LABOR RELATIONS BOARD.
 No. 91-1488.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Nov. 2, 1992.
Decided Feb. 2, 1993.
As Amended Feb. 5, 1993.
 
 Petition for Review and Cross-Application for Enforcement of an Order of the National Labor Relations Board.
 Robert A. Blackstone, Seattle, WA, for petitioner.
 Nancy B. Hunt, Atty., N.L.R.B., with whom Jerry M. Hunter, Gen. Counsel, Aileen A. Armstrong, Deputy Associate Gen. Counsel, Howard E. Perlstein, and Margaret G. Bezou, Attys., N.L.R.B., Washington, DC, were on the brief, for respondent.
 Before SILBERMAN, BUCKLEY, and D.H. GINSBURG, Circuit Judges.
 Opinion for the Court filed by Circuit Judge D.H. GINSBURG.
 D.H. GINSBURG, Circuit Judge:
 
 
 1
 The Seattle Seahawks petition for review of the amount of backpay that the National Labor Relations Board awarded to Sam McCullum, a former player whom the Seahawks unlawfully discharged. Finding that its backpay decision is supported by substantial evidence in the record, we uphold the Board in all respects.
 
 I. Background
 
 2
 Sam McCullum began playing professional football as a wide receiver in 1974 and joined the Seattle Seahawks in 1976. It is undisputed that he was unlawfully released by the Seahawks in September 1982 for engaging in union-related activities. See Elmer Nordstrom, Managing Partner, et al. d/b/a Seattle Seahawks, 292 NLRB 899 (1989).
 
 
 3
 The Seahawks routinely notified all National Football League (NFL) teams of McCullum's availability. After trying out with the then-Oakland Raiders, McCullum accepted an offer of employment with the Minnesota Vikings. Minnesota released McCullum in May 1984, after McCullum rejected that team's offer of $203,500 for the 1984 season. McCullum, who had not received an offer for 1984 from any other NFL team, wrote the Vikings a formal letter of retirement in order to secure his pension benefits. In the letter he said that he did not intend to resume playing for the NFL.
 
 
 4
 The Board determined that McCullum's backpay period--that period during which he would have remained employed by the Seahawks but for the Employer's unlawful discrimination--extended through the end of the 1985 football season. The Board concluded, however, that the backpay award should run only through December 1984, because by that time McCullum had quit searching for suitable employment; he had thus failed to mitigate his damages beyond that point. Elmer Nordstrom, Managing Partner, et al., Supp.Dec. and Order, 304 NLRB No. 78 (Aug. 27, 1991). In this regard, the Board reversed the ALJ, who determined that McCullum had abandoned his search for employment in September 1984.
 
 
 5
 Players earn additional income when their team advances to the playoffs. The Vikings went to the playoffs in 1982; the Seahawks went in 1983. The Board found that McCullum's earnings from the Vikings' participation in the 1982 playoffs were the fruits of "interim employment" and thus were not deductible from the amount of backpay for which the Seahawks are liable to McCullum. The Board also ordered the Seahawks to compensate McCullum for income he would have received by reason of the Seahawks' participation in the 1983 playoffs.
 
 
 6
 The Seahawks seek review of the Board's determination that the backpay award should extend through the end of 1984 rather than ending in September of that year. The Employer also challenges the Board's refusal to deduct McCullum's 1983 playoff earnings from the amount of backpay due him.
 
 II. Analysis
 
 7
 Section 10(c) of the National Labor Relations Act authorizes the National Labor Relations Board to award backpay in order to remedy the effects of unlawful discrimination. 29 U.S.C. 160(c). The General Counsel bears the burden of proof in establishing the backpay period--in this case, the period during which McCullum would have continued to play for the Seattle Seahawks had he not been unlawfully discharged. NLRB v. Brown & Root, 311 F.2d 447, 454 (8th Cir.1963). That determination need not be highly individualized; the Board need only apply "to particular facts a reasonable formula for determining the probable length of employment." Sure-Tan, Inc. v. NLRB, 467 U.S. 883, 901 n. 11, 104 S.Ct. 2803, 2814 n. 11, 81 L.Ed.2d 732 (1984). Because the length of a football player's career is highly variable with the individual player, however, the inquiry here was of necessity more detailed than in the usual industrial setting.
 
 
 8
 The General Counsel met his burden of establishing that McCullum would have played for the Seahawks through the 1984 season but for the unlawful discrimination. The Board affirmed the ALJ's determination that, looking at the Seahawks' roster, and McCullum's experience with Seattle, McCullum would have remained with that team in 1984. In support of its position that the Seahawks would not have retained McCullum for the 1984 season, the Employer argues simply that McCullum lacked the ability to play in the NFL after 1983. At least one team, however, thought otherwise: Minnesota offered to renew McCullum's contract for 1984, and McCullum failed to play that year only because he rejected Minnesota's offer as inadequate. We agree with the Board's determination that the Vikings' offer, combined with McCullum's experience with the Seattle system and Seattle's dearth of wide receivers suffices to establish that the backpay period should extend at least through the end of 1984.
 
 
 9
 The Employer also argues that because McCullum did not more actively look for employment after September 1984, he failed to mitigate his damages after that point. The Employer bears the burden of proof on this point. Brown & Root, 311 F.2d at 454 (employer has burden "to establish facts which would negate the existence of liability to a given employee or which would mitigate the liability"). McCullum's agent testified that he made inquiries regarding employment opportunities into the fall of 1984. McCullum's availability was widely known due to both these inquiries and Minnesota's earlier notice to all NFL teams that McCullum would no longer be playing for the Vikings.
 
 
 10
 Whether McCullum failed to exercise reasonable diligence in pursuing the various employment possibilities open to him is a closer question. McCullum did not try to find employment in the United States Football League, but that was not unreasonable because the 1984 USFL season was almost over when McCullum was released by the Vikings. We are more troubled by McCullum's failure to seek alternative employment in the Canadian Football League. We agree with the Board, however, that at least for the limited time between his waiver by the Vikings and the end of 1984 it was reasonable for McCullum to look for employment only in the NFL, where he had played his entire career and where his prospects seemed brightest. To be sure, an employee may need to lower his sights after a time, but the Board may resolve any reasonable doubt about the length of that time in favor of the innocent employee. See NLRB v. Madison Courier, 472 F.2d 1307, 1321 (D.C.Cir.1972). Thus, we need not decide today whether the duty of mitigation ever entails an obligation to seek employment in a foreign country. We therefore affirm the Board's determination that McCullum made "reasonable exertions" by indicating his desire for an NFL position and then, when no employment opportunities were immediately forthcoming, waiting as the season progressed to see whether any NFL team would hire him to replace an injured player. See NLRB v. Madison Courier, Inc., 472 F.2d 1307, 1318 (D.C.Cir.1972).
 
 
 11
 The Employer contends that McCullum effectively abandoned his search for employment when he sent his letter of resignation to the Vikings in August 1984. It is undisputed, however, that the letter was essentially a formality, "necessary," as the Board found, "to avoid a significant delay in obtaining severance pay," and revocable if McCullum received a contract offer from an NFL team. Supp.Dec. and Order at 5. While the retirement letter stated that McCullum did not intend to resume playing professional football, there is no evidence that the letter had any effect upon the NFL teams with whom McCullum continued to seek employment. Absent some evidence that sending the letter limited McCullum's prospects for re-employment, that letter cannot serve to terminate the Employer's liability. The Board's determination is supported by substantial evidence and we thus affirm it.
 
 
 12
 Finally, the Employer challenges the Board's refusal to deduct from its backpay liability the money McCullum earned when Minnesota went to the playoffs in 1982, although the Board included in the backpay award the money McCullum would have earned had he gone to the playoffs with Seattle in 1983. The Board treated McCullum's 1982 playoff earnings as supplemental income resulting from an additional two weeks of work over and above the time he would have worked for Seattle. In calculating backpay, the Board does not deduct supplemental income earned from a 'moonlighting' job or from excess overtime even if the backpay claimant appears to be made "more than whole, [because] it is as a result of his extra effort above and beyond his performance of a full time job" that he secures the extra income. See United Aircraft Corp., 204 NLRB 1068 (1973). McCullum worked an additional two weeks in order to secure his playoff pay. Therefore, the Board correctly determined that McCullum's 1982 playoff earnings represented supplemental income for a time during which he would not have been employed had he remained with Seattle because Seattle did not go the playoffs that year.
 
 
 13
 The Board's decision creates an apparent anomaly insofar as McCullum profits because the Seahawks and the Vikings went to the playoffs in different years. (If Seattle and Minnesota advanced to the playoffs during the same year, McCullum's playoff income could not properly be viewed as supplemental because McCullum would not have worked any days for Minnesota over and above the number of days he would have worked for Seattle in the relevant quarter.) The anomaly arises because the Board calculates backpay by calendar quarter, rather than by deducting the total amount earned in mitigation from the total amount of backpay otherwise due. Had the Board not used the calendar quarter system here, McCullum's 1983 playoff earnings might properly have been offset against his lost earnings from the 1982 playoffs; McCullum actually worked for Minnesota in the 1982 and 1983 seasons combined for the same number of hours he would have worked for Seattle over the same period. The Board's calendar quarter methodology is of longstanding and consistent application, however, see NLRB v. The Madison Courier, Inc., 505 F.2d 391, 395 (D.C.Cir.1974); NLRB v. Hopcroft Art & Stained Glass Works, Inc., 692 F.2d 63, 64 (8th Cir.1982); F.W. Woolworth Co., 90 NLRB 289 (1950). The Employer has not challenged the application of that methodology to professional football, and accordingly we make no judgment as to its propriety here.
 
 III. Conclusion
 
 14
 For the foregoing reasons, the petition for review is in all respects denied and the cross-application for enforcement is granted.