# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3318

_____

National Labor Relations Board,            *
                                           *
            Petitioner,                    *
                                           *
      v.                                   *
                                           *
                                           *
John T. Jones Construction Co., Inc.,      *
                                           *  On Application for Enforcement and
                                           *  Cross-Petition for Review of an Order
            Respondent,                    *  of the National Labor Relations Board.
                                           *
                                           *
Carpenters District Council of Kansas      *
City & Vicinity Local No. 311 and 978,     *
                                           *
            Intervenor.                    *
                                           *
                                           *

_____

Submitted: April 14, 2009
Filed:  August 14, 2009

_____

Before RILEY,  BENTON, and SHEPHERD,  Circuit Judges.

_____

BENTON, Circuit Judge.

The National Labor Relations Board requests this court enforce its Supplemental Decision and Order awarding back pay to four employees of John T. Jones Construction Company, Inc. *See **John T. Jones Constr. Co.***, 352 N.L.R.B. 1063 (2008). The Company cross-petitions for review of the back pay calculation. Having jurisdiction under 29 U.S.C. § 160(e) and (f), this court denies the cross-petition and enforces the Order.

In the unfair-labor-practice proceeding, the Board found that the Company unlawfully discharged the four employees due to their union affiliation. The Company was ordered to reinstate them, and pay for lost earnings. *See **29 U.S.C. § 160(c)***. The parties did not agree on the amount of back pay, leading the Regional Director to issue a Compliance Specification. Calculating the back pay, the Board used the wages and hours of comparable employees. The calculation took into account the prevailing hourly wage rate (including wages paid by the Company in lieu of benefits). The Board subtracted the four employees' interim earnings to determine the net owed.

The purpose of back pay is to make whole the employee harmed by an unfair labor practice. *See **Woodline Motor Freight, Inc. v. NLRB***, 972 F.2d 222, 224 (8th Cir. 1992), *quoting **NLRB v. Brown & Root, Inc.***, 311 F.2d 447, 452 (8th Cir. 1963). The employee is entitled to his or her normal earnings during the period of discrimination, less what she or he actually earned in other employment during that time. ***Id.***

"The remedial power of the Board to award back pay is a broad discretionary one, subject to limited judicial review." ***Woodline***, 972 F.2d at 225, *quoting **Fibreboard Paper Prods. Corp. v. NLRB***, 379 U.S. 203, 216 (1964). Once the Board awards back pay, a court "may ordinarily go no further than to be satisfied that the method selected cannot be declared to be arbitrary or unreasonable in the

circumstances involved." *Woodline*, 972 F.2d at 225, *quoting **NLRB v. Ozark Hardwood Co.***, 282 F.2d 1, 7 (8th Cir. 1960).

I.

The Company contends that the Board unreasonably failed to offset, against the gross back pay owed by the Company, fringe-benefit contributions by interim employers. The Company argues that the additional compensation it pays in lieu of benefits is equivalent to the interim fringe-benefit contributions. If interim fringe benefits are not added to interim earnings, the Company says that the four employees will receive a windfall. *See **Local 60, United Bhd. of Carpenters & Joiners of Am., AFL-CIO v. NLRB***, 365 U.S. 651, 655 (1961), *quoting **Consol. Edison Co. of New York v. NLRB***, 305 U.S. 197, 236 (1938) (explaining the power of the Board to command affirmative action is "remedial, not punitive").

The Board's Order relies on a factually analogous case. There, a circuit court of appeals upheld the Board when it did not offset (against gross back pay) fringe-benefit contributions by interim employers. As in this case, the employer there paid wages in lieu of benefits. ***Tualatin Elec., Inc.***, 331 N.L.R.B. 36, 42-43 (2000), *enforced* 253 F.3d 714 (D.C. Cir. 2001). The Company, invoking the Board Chairman's partial dissent in this case, contends that *Tualatin Electric* is not persuasive because it does not cite any cases, and the circuit court did not mention the issue.

The Company relies on a Title VII discrimination case for the proposition: "Fringe benefits should likewise be deducted as interim earnings." ***Catlett v. Missouri State Highway Comm'n***, 627 F. Supp. 1015, 1018 (W.D. Mo. 1985). Title VII precedent is not persuasive in this unfair-labor-practice case. More relevant is the NLRB Casehandling Manual, which provides: "A medical insurance plan or contributions to a retirement fund are not normally treated as interim earnings and

offset against gross back pay." **NLRB Casehandling Manual (Part Three) Compliance Proceedings § 10552.4 (last revised 2007)**. In view of the deferential standard of review afforded Board orders, the general distinction between cash and non-cash compensation is not arbitrary or unreasonable, because cash is immediately available. *See **Woodline***, 972 F.2d at 225, *quoting **Brown & Root***, 311 F.2d at 452 ("[T]he Board may use as close approximations as possible [of back pay], and may adopt formulas reasonably designed to produce such approximations.").

The Manual does recognize an offset for "equivalent" fringe benefits, but in effect requires them to be "identical." *See ***NLRB Casehandling Manual, § 10552.4***. ("Health insurance and retirement contributions earned through interim employment may, however, be offset against equivalent benefits that are components of gross backpay."); **§ 10544.3** (equivalent retirement benefits do not include any profit-sharing plans or a different union's pension fund, but are limited to same union's pension fund). The Manual does recognize that immediately available fringe benefits should be offset. *See* **§ 10552.5** ("The reasonable value of other forms of compensation, such as employer-provided housing, cars, or meal allowances, should be treated as interim earnings and offset against gross backpay.").

This Court need not address uncommon fringe benefits, or the limits of the "identical" rule. The burden is on the Company to show that the Board's method was arbitrary or unreasonable in this case. The Company failed to show that the interim fringe benefits had immediate cash value of such significance to the employees that the Board was arbitrary or unreasonable in excluding the value of the interim fringe benefits, in determining net back pay. *See **Woodline***, 972 F.2d at 224-25, *quoting **Brown & Root***, 311 F.2d at 454 (explaining after the Board demonstrates the gross amount of back pay, "the burden is upon the employer to establish facts which would negative the existence of liability to a given employee or which would mitigate that liability."). *cf*. ***United Enviro Sys., Inc.***, 323 N.L.R.B. 83, 84 (1997) (deducting from net back pay: (1) payment from interim employer's profit-sharing plan that employee,

at end of interim employment, received in cash; and (2) distributions from interim employer's pension plan that employee, at end of interim employment, had option to receive in cash or roll over to 401(k) plan).

## II.

The Company asserts that the Board, in calculating the earnings of comparable employees, erred in including overtime. In setting back pay, the Board may include overtime hours worked by comparable employees. *See Performance Friction Corp.*, 335 N.L.R.B. 1117, 1117 n.3 (2001). The Company contends that there would have been no overtime if it had not wrongly discharged the employees. The Company, however, did not meet its burden of showing that the Board was arbitrary or unreasonable in including overtime hours worked by the comparable employees. *See* **8th Cir. R. 47B**.

## III.

As for three employees, the Company argues that the Board erred in selecting comparable employees because they worked at higher-paying classifications during the back pay period. However, the Company failed to prove that the awards were arbitrary or unreasonable. In fact, one comparable employee worked in a different pay classification only four percent of the time. The Board also presented substantial evidence that two former employees would have been routinely promoted if not wrongly discharged. *See* **Woodline**, 972 F.2d at 225, *quoting* **NLRB v. Westin Hotel**, 758 F.2d 1126, 1130 (6th Cir. 1985) (The Board's conclusions "will be overturned on appeal only if the record, considered in its entirety, does not disclose substantial evidence to support the Board's findings."). The Company failed to meet its burden on this issue. *See* **8th Cir. R. 47B**.

IV.

The Company contends the back pay for one former employee should be four weeks (instead of 42 weeks) because, as a union "salt," he would have quit his job within four weeks (which he did after reinstatement). The Board correctly found that this employee, even if he was a salt, would have remained employed for the back pay period (which ended before the representation election). The Board's order is supported by substantial evidence on the record, and further analysis is without precedential value. *See* **8th Cir. R. 47B**.

V.

According to the Company, the Board should have ended one employee's make-whole period when he moved from Springfield to St. Louis. The Company asserts that by moving, the former employee was no longer seeking "substantially equivalent alternate employment." *See **Arlington Hotel Co. v. NLRB***, 876 F.2d 678, 680 (8th Cir. 1989). The facts refute the Company's assertion. The employee mitigated his losses by securing equivalent construction work within a week of moving to St. Louis (which he continued until the back pay period ended when he began law school). Therefore, the Board's calculation of the end date is not unreasonable. *See* **8th Cir. R. 47B**.

VI.

The cross-petition for review is denied, and the Supplemental Decision and Order of the Board is enforced.

_____